# Evans *v.* Memphis & Charleston Rail Road Company.

*Action for Damages against Railroad Company, by Ejected Passenger.*

1. *Constitutionality of act of April 19, 1873, "regulating the charges for transportation of freight on railroads," as to title and subject.*—So much of the act approved April 19, 1873, entitled "An act regulating the charges for transportation of freight upon railroads" (Sess. Acts 1872-3, p. 62), as relates to the transportation of passengers, is unconstitutional, since the title limits the act to the transportation of freight.

2. *Railroad company as common carrier; regulation requiring passengers on freight trains to procure tickets.*—A railroad company, as a common carrier, may make reasonable rules for the regulation of its business and the performance of its public duties; but, in the adoption of these rules, regard must be had to the convenience and interests of the travelling public. It may forbid the transportation of freight and passengers on the same trains, or may require passengers, travelling on freight trains, to procure tickets before entering the cars; but, in such case, reasonable facilities for procuring tickets, at or about

the time of the arrival or departure of the trains, must be afforded, according to the established usage of all railroads; and it is not reasonable, while allowing passengers to travel on freight trains, to afford them no opportunity to procure tickets, except at such hours as would make it more expeditious to travel by the passenger trains.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. LOUIS WYETH.

This action was brought by Henry G. Evans, against the Memphis & Charleston Railroad Company and the Southern Railway Security Company (the latter corporation being the lessee of said railroad), to recover damages for injuries sustained by plaintiff on account of defendants' refusal, through their agent, to allow him to travel on one of their trains, and compelling him to leave it, because he had not procured a ticket before entering the cars; and was commenced on the 15th February, 1874. The complaint averred that, on the 13th February, 1874, the day on which the grievances complained of were committed, the defendants were operating, for their joint advantage and profit, the line of railway between Memphis and Chattanooga, which ran through Tuscumbia, Alabama, to and through Iuka, Mississippi, and were running trains of cars, which carried both freight and passengers, for reward; that the plaintiff, being in Tuscumbia on the said 13th February, 1874, and desiring to travel by the defendants' road to Iuka, made repeated efforts to procure a ticket at the railroad office in Tuscumbia, and sent a messenger to the defendants asking them to sell him a ticket, which might enable him to travel on the cars from Tuscumbia to Iuka; that the train on which he wished to travel carried both freight and passengers, and was advertised to arrive at Tuscumbia at one o'clock P. M., and to leave two minutes afterwards, bound westward; that the ticket office in Tuscumbia was closed on that day, from ten o'clock in the morning until the arrival and departure of the train at one o'clock, and the plaintiff was unable to procure a ticket; that he thereupon entered the cars, on the moment of their departure, and stated to the conductor, who demanded his ticket, his fruitless efforts to procure a ticket, and offered to pay his fare in money, or to deposit money with the conductor to buy a ticket at Iuka; that the conductor refused to accept the money, refused to sell him a ticket, and compelled him to leave the cars, &c.; by means whereof, plaintiff was greatly injured in his business, &c., to his damage $5,000. The defendants separately pleaded the general issue; and the railroad company also pleaded, that its co-defendant, the Southern Railway Security Company, was the lessee of its road, fixtures, &c., and was operating the road for its own

separate use and benefit, at the time the alleged grievances were committed ; and issue seems to have been joined on both of these pleas.

On the trial, as the bill of exceptions shows, the plaintiff was examined as a witness on his own behalf, and testified to the facts alleged in the complaint, about which there seemed to be controversy. On the part of the defendants it was proved, that the Southern Railway Security Company was, on the said 13th February, 1874, operating the said railroad on its own account, under a lease from the railroad company. The conductor of the train from which the plaintiff was ejected, who was examined as a witness for the defendants, testified that the plaintiff offered to pay his fare to Iuka in money, and offered to deposit with him the money to buy a ticket at Iuka, which offers he refused to accept, and compelled the plaintiff to leave the cars, because his instructions were imperative to allow no one to travel on the train without a ticket. F. A. Ross, who was the ticket and freight agent of the railroad at Tuscumbia, in the employment of the Southern Railway Security Company, was examined as a witness for the plaintiff, and testified that, until within a few weeks before the 13th February, 1874, passengers were not allowed to travel on the freight trains ; that about that time, on the application of citizens along the line of the road, who desired to come into Tuscumbia on matters of business, he was instructed by the officers of the road to allow persons to travel in the caboose car attached to the freight trains, but they were required to procure tickets before entering the cars ; that the regular passenger train, going westward, from Tuscumbia to Iuka, was due in Tuscumbia about half past four o'clock in the afternoon, and the ticket office was opened each day, from half an hour to an hour, before its arrival, but at no other time during the day ; that the plaintiff's messenger from the hotel came to him after the arrival of the freight train on the day specified, and requested him to go to the office and sell plaintiff a ticket to Iuka ; that he refused to go, but did not know to what place the plaintiff was going, or on what train he wanted to go ; that a public notice was posted at the ticket office, stating the hours at which the office was open, and that the plaintiff was informed of the regulations of the road requiring passengers to procure tickets.

"This was all the evidence in the case. The plaintiff's counsel read to the court, in argument, the act of the legislature approved April 19, 1873, entitled ' An act regulating the charges for transportation of freight upon railroads within this State," which consists of three sections, as fol-

lows: *Sec.* 1. "That it shall not be lawful for any railroad company, nor any officer, manager, or agent of any railroad in this State, nor any lessee or lessees thereof, or association or corporation managing or operating any railroad in this State, to make any discrimination in the rates and charges for the transportation of freight or passengers, from any the same point or place on the line of said railroad, against its being carried thereon in one direction or the other on such road; and any party violating the provisions hereof shall be liable to the party injured thereby, in double the amount of over-charge; but in no case shall the penalty be less than twenty dollars." *Sec.* 2. "That all railroad companies in the State are hereby authorized to charge and receive, for the transportation of passengers over their roads, or any part thereof, at the rate of five cents per mile, and no more; *provided*, such railroad company may charge an additional half-cent per mile from such each?] passenger who pays his fare to the conductor in the car, and who enters the car at a place where tickets are kept by the company for sale; *provided*, each ticket office shall be opened and kept open for one hour immediately preceding the departure of each passenger train; and may, for the transportation of local freight, demand and receive not exceeding fifty per cent. more than the rate charged for the transportation of the same description of freight over the whole line of its road; and any railroad company, manager, agent, or officer, violating the provisions hereof, shall be liable to the party injured thereby, in double the amount of the over-charge; but in no case shall the penalty be less than twenty dollars." The third section repealed all inconsistent laws. The court charged the jury, that the provisions of this act, so far as it related to the transportation of passengers, was unconstitutional and void; to which charge the plaintiff excepted.

The court further charged the jury: 2. "That if, by the rules and regulations of the defendants, no one was permitted to travel as a passenger on the trains used for carrying both freight and passengers, unless he first procured a ticket, then, unless plaintiff had a ticket, the defendants had the right to eject him from the said cars, although he may have offered to pay the conductor his fare in money." 3. "That if they believed from the evidence that the defendants' rules and regulations did not permit passengers without tickets to travel on the trains used by them to carry both freight and passengers, and that plaintiff was ejected from one of said trains because he had no ticket, then they must find for the defendants."

The plaintiff excepted to each of these charges, and re-

quested the court, in writing, to instruct the jury as follows : 1. "Before a railroad company can require passengers to procure tickets before they can ride on the cars, the said railroad company must afford every reasonable facility to procure tickets ; and if the ticket office was closed on the day the plaintiff was put off the cars, he had the right to travel on the cars without a ticket, provided he offered to pay his fare." 2. "That plaintiff had the right to ride on said train on the 13th February, 1874, without a ticket, provided he offered the conductor the money for his fare." The court refused to give these charges, and the plaintiff excepted to their refusal.

The charges given by the court, and the refusal of the charges asked, are now assigned as error.

J. B. MOORE, for the appellant.—1. In the transportation of passengers and freight, railroad companies are common carriers, and subject to all the duties and liabilities imposed by law on such carriers. They cannot evade these duties, or limit their liability for the non-performance thereof, by any notice posted up at their ticket office, or other place of business. They may adopt reasonable rules and regulations for the conduct and management of their business; but no regulation is reasonable which disregards the necessities, comfort, or convenience of the public, or which attempts to limit the duties and liabilities which are by law attached to their employment. When the defendants threw open their freight trains to passengers, those trains became passenger trains ; and while they might require passengers to procure tickets before entering the train, they were bound to afford reasonable facilities for procuring tickets. They certainly could not require plaintiff to procure a ticket, refuse to sell him one, and then eject him from the cars because he did not have one.—16 Wallace, 319 ; *Dunn v. Grand Trunk Railroad Co.*, 58 Maine, 157; *Illinois Railroad Co. v. Sutton*, 53 Ill. 397; *Jefferson Railroad Co. v. Rodgers*, 38 Indiana, 116 ; *S. C.*, 28 Indiana, 1; 55 Ill. 185; 15 Minn. 40 ; 52 N. H. 430 ; Lacey's Digest, 420-21, §§ 203-08; 2 Kent's Com. 780, 8th edition.

2. The act of. April 19, 1873, is not obnoxious to any constitutional provision. Its title is broad enough to include the transportation of men, cattle, or freight of any kind. For the liberal construction which constitutional provisions, similar to ours, have received from the courts, see Cooley's Const. Limitations, 146.

BEIRNE, HUMES & GORDON, *contra*.—1. Under the circum-

stances disclosed by the evidence, the railroad company was under no obligation to keep its ticket office open at any hour of the day except immediately before the arrival of the regular passenger train. The exceptional privilege of riding upon freight trains was granted upon conditions which were reasonable and proper, and which were accepted by those for whose accommodation, and at whose request alone, the permission was granted. The right of the public to travelling accommodations from a common carrier is not an unlimited right, but is subject to such reasonable regulations as the carrier may prescribe, for the due accommodation of the travelling public, for the proper transportation of freight, and for the due arrangement of its business.—Story on Bailments, § 519 a; Angell on Carriers, §§ 525, 530 ; Pierce on Amer. Railroad Law, 253.

"A railroad company has the right to make a regulation requiring all passengers to purchase tickets before taking passage in a caboose car attached to a freight train, and to enforce this rule by ejecting all persons not having tickets." Law v. Illinois Central Railroad Co., 32 Iowa, 534 ; T. P. & W. Railroad Co. v. Patterson, 63 Illinois, 304. "A passenger, who knowingly disregards the rule requiring tickets to be purchased before taking passage upon a freight train, is upon the same footing with one who refuses to pay fare, and may be expelled at any regular station."—C., C. & C. Railroad Co. v. Bartram, 11 Ohio St. 457 ; Illinois Central Railroad Co. v. Nelson, 59 Illinois, 110. "It is the duty of a railroad company to the public to run its trains according to its regulations. These cannot be infringed to accommodate a single passenger. It is the duty of each passenger to inform himself when, where, and how he can go or stop, according to the regulations of the company's trains ; and if he make a mistake, which is not induced by the company's agent, he has no remedy."—Pittsburg, Cincinnati & St. Louis Railroad Co. v. Nuzum, decided by the Supreme Court of Indiana, and reported in Central Law Journal, Dec. 24, 1875, p. 829 ; also, Chaney v. B. & M. Railroad Co., 11 Metc. 121 ; B. & L. Railroad Co. v. Proctor, 1 Allen, 267 ; Johnson v. Concord Railroad Co., 46 N. H. 213.

2. The ruling of the court below as to the unconstitutionality of the act approved April 19, 1873, was correct, as the title limits the act to the transportatation of freight.— Walker v. The State, 49 Ala. 329. Even if erroneous, it was error without injury, since the alleged injury occurred on a freight train ; and the provisions of said act as to passenger trains, admitting their constitutionality, had no possible application.

BRICKELL, C. J.—1. We concur with the judge of the Circuit Court in the opinion, that so much of the act of April 19, 1873, entitled "An act regulating the charges for transportation of freight upon railroads within this State" (Pamph. Acts 1872-3, p. 62), as relates to the transportation of passengers, is unconstitutional. The title limits the subject of the enactment to the transportation of freight, excluding by its terms any reference to passengers. Whether the act, if constitutional, has any especial influence on the questions the case presents, is not material to discuss.

2. A common carrier is bound to transport all freight and passengers which offer, within the line of his usual business, and an unreasonable failure or refusal is a breach of the duty imposed by the nature and character of his employment.—2 Redf. Rail 219, § 182. The carrier has power to make reasonable rules and regulations, as to the time and mode of the performance of the duty; and to these rules all who seek his services must conform. In justice, he cannot ask to make unreasonable rules and regulations, or, without consulting the rights, convenience, and interest of the public who rely on him for transportation, arbitrary rules and regulations, adapted only to his convenience and interest. In determining whether a regulation he adopts is reasonable, while due regard will be paid to the character and responsibility of his relation to the public, their rights and interests must be kept in view. A railroad is a carrier of freight and passengers; and its officers and agents may properly use separate trains for the transportation of freight and of passengers, excluding passengers from the one, and freight from the other.— *Cleveland, Columbus & Cincinnati Railroad Co. v. Bartram*, 11 Ohio St. 459; *Dunn v. Grand Trunk Railway*, 58 Maine, 187. If they permit the transportation of passengers on trains especially devoted to the transportation of freight, it is but a reasonable regulation to require such passengers to procure tickets before entering the train. Such a regulation is not burdensome on the passenger, and may be necessary for the protection of the interests of the railroad company. It would be reasonable and just as to a train devoted especially to carriage of passengers.—*C. B. & T. R. R. v. Parks*, 18 Ill. 460.

These are propositions not controverted in the present case. The point of controversy is, the railroad company having opened its freight trains for the transportation of passengers, who procured tickets, must not reasonable facilities be afforded the travelling public to procure tickets? If such facilities are not afforded, can a passenger who has entered the car, after using proper diligence to procure a ticket, and

failing, offers to pay the proper charge for his transportation, be rightfully ejected? We have no hesitation in answering the first question affirmatively, and the second negatively. In the determination of these questions, no importance is, or should be, attached to the fact, stated by the ticket agent at Tuscumbia, that the inducement to open the freight trains to the transportation of passengers was the request of citizens, residing near the line of the road, whose convenience would be thereby promoted. The fact is, the freight trains were opened to the transportation of all passengers who procured tickets before entering the cars. The only limitation on the right of transportation was the procurement of a ticket. The residence, or the business of the passenger, was not a reason for his exclusion; and it is far from being certain that any discrimination because of the residence, or business of the passenger (the business not being unlawful), could be allowed; that the freight trains could be opened, not for the public at large—for all whose inclination, convenience, or interest, might induce them to accept that mode of transportation—but for persons residing in a particular locality, or taking that mode of transportation for particular reasons.

Having opened the freight trains for the transportation of passengers, inducing the public to seek and rely on transportation by them, while properly those who sought this mode of transportation could be required to procure tickets, reasonable facilities for procuring tickets must be afforded. It would be a mere delusion of the public, to advertise them that the freight trains were opened for the transportation of passengers who procured tickets, and yet afford no opportunity for procuring a ticket, until it would be more convenient to take the passenger train, if immediate transportation was the purpose. Immediate and expeditious transportation is the public benefit derived from railways, which is the consideration of the extraordinary rights and privileges conferred by the legislative enactments incorporating the companies constructing and operating them. The travelling public but seldom obtain the ticket, which is a mere acknowledgment of the right of the bearer to transportation, on any train passing to the place designated on it, until on the eve of the departure of the train it is proposed to take. This has been so long the habit of the travelling public, induced by the usage of railroads to afford, just before, and on the departure of the trains, more certainly than at any other time, the opportunity of procuring tickets, that it would be a public deception now to recognize as reasonable a regulation

[Evans v. Memphis & Charleston Railroad Company.]

of the road which required the procurement of tickets several hours in advance of that time.

If it was a rule of this road, that the office for the sale of tickets should be open only an hour before the arrival or departure of the passenger trains, or only at the time of the arrival or departure of such trains, and this was several hours different from the time of the arrival and departure of the freight trains, it was not reasonable, as to persons desiring to travel on the freight trains. It was an inhibition of transportation on the freight trains opened to the uses of passengers' trains, and publicly ·appropriated to such uses, unless a regulation was complied with, that is variant from the usages of railroads, on which the travelling public do, and have just right to rely. It was misleading and deceptive, and would often operate, as the evidence in this case tends to show it did operate, to disappoint and delay those who accommodated themselves to the uses publicly made of the freight trains. Certainly, it was no hardship that the ticket office should have been opened, or some other facility afforded for procuring tickets, at some reasonable time coincident with the arrival and departure of the freight trains, if it was intended that the travelling public should be allowed passage on them. It would only have been conformity to the usage of railroads, and the usage of this road, as to passenger trains. The distinction between the two trains, except as to the accommodations to be afforded, and the speed of travel, was destroyed when the freight train was made also a passenger train. While the procurement of a ticket was a reasonable regulation, it becomes unreasonable, if proper facilities for obtaining it are not afforded. Proper facilities are not afforded, when tickets can be bought, as a matter of right, only when transportation immediately would be more convenient on the regular passenger trains.

The Circuit Court erred in the second and third instructions to the jury, and in refusing the first instruction requested by the appellant. We are not justified, in the present aspect of the case, in determining whether the appellant's remedy for the wrong of which he complains is against the lessee only, or against lessor and lessee jointly. Nor is there before us any question as to the measure of damages, if the appellant can recover.

The judgment is reversed, and the cause remanded.