RUTLEDGE v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Railroads**: THEIR DUTY TO FENCE. A county road ran parallel with and immediately adjoining the right of way of a railroad company, where the latter passed through uninclosed prairie lands. *Held*, that this did not exempt the company from the duty to fence imposed by the 43rd section of the Railroad Law. R. S. 1879, § 809.

2. ———: ———: ORDINARY CARE. Under this section, a railroad company is not chargeable as an absolute insurer of its fences, but with the exercise of ordinary care, only, in keeping them in repair. Ordinary care, however, is a relative term, to be measured by the nature of the case, the hazard and the situation. In keeping up its fences, the care required of a railroad company is not limited to such as would be used and exercised by an ordinarily careful farmer.

*Appeal from Shelby Circuit Court.*—HON. JOHN T. REDD,
Judge.

AFFIRMED.

*Geo. W. Easley* for appellant.

*R. P. Giles* and *King* for respondent.

PHILIPS, C.—This is an action for damages for killing
cattle by the defendant railroad, based on what is known
as the 43rd section. Wag. Stat., art. 2, ch. 37. There were
three counts in the petition. It is not necessary to set them
out as they are good in form. The answer is a general
denial.

On the trial, plaintiffs introduced testimony tending
to prove that during the years 1878, 1879 and 1880, plaint-
iffs were partners and were still such, and were the owners
of the stock described in their petition; that all of the
stock sued for by plaintiffs in this cause were killed and
crippled by defendant at the times set out in plaintiffs' peti-
tion, and were of the value therein claimed; that all of said
stock were killed and crippled between the corporation line
at Clarence station and three miles east of there, Messick
crossing, being three miles east of Clarence station, except
one head of said stock valued at $20, which was struck and
killed on said Messick public road crossing; that the south
line of defendant's fence between said Messick crossing and
Clarence station was at the time stated in plaintiffs' petition
out of repair, and that there were at each of said times
when said stock was injured, several places that stock could
have and had gone through and got upon defendant's track,
although some ordinary repairs had been made on said
fence by defendant, a little before the stock was killed on
the 25th day of July, 1879; that defendant's right of way
was inclosed from Clarence to Messick's crossing, and
plaintiffs' stock and the stock of others grazed on the un-

inclosed prairie lands south of the defendant's inclosure; that there is a public highway running along adjoining to, located on the unimproved prairie lands and parallel with defendant's right of way on the south side and extending from Messick public road crossing to Clarence station, except that travelers have deviated from a straight line for their own convenience and gone some fifty yards farther south than the road is located in order to get by bad places in the road, but that said public highway south of the track is a county road; that the land south of said public road was uninclosed prairie land, and that there were cultivated fields on the north side of defendant's track.

Whereupon the defendant prayed the court to instruct the jury as follows: "Admitting all of the facts adduced by plaintiffs to be true, the finding must be for defendant." Which instruction the court refused to give. To the action of the court in refusing to give said instruction, defendant at the time excepted.

Defendant then introduced testimony tending to prove that all of the stock sued for in the first and fourth counts of plaintiffs' petition was killed and crippled while on Messick's public road crossing; that its south line of fence had been repaired the evening the stock was killed, sued for in the third count of plaintiffs' petition, but that said stock was inclined to be breachy and had been driven away that evening by defendant's employes; that the fence where the stock got through and which is sued for in plaintiffs' third count had been originally a good and sufficient fence, five feet high, and although it had been out of repair before, yet at the time said stock was killed, it was in places in ordinarily good condition and sufficient to keep out stock if it had not been breachy and inclined to break through. Thomas Mitchell, a witness for defendant, then identified Messick public road crossing and defendant's track as being on the east line of section 23, township 57, range 12. Defendant offered in evidence the order of the county court of Shelby county, establishing and locating a public high-

way from the town of Clarence, Shelby county, to the east line of section 23, township 57, range 12, which said record was admitted by plaintiffs as being the record and order of the county court of Shelby county. To the introduction of said record in evidence plaintiffs objected, because irrelevant and immaterial, which said objection was by the court overruled. Defendant then read said record and order of said county court in evidence.

It is not deemed essential to set out the instructions given for plaintiffs, as no questions arise on them worthy of discussion. The following instructions were requested by defendant and refused:

1. The court declares the law to be that under the pleadings and evidence plaintiffs cannot recover, and the finding should be for defendant.

2. The court declares the law to be that defendant is not required under section 809, Revised Statutes, to fence its track at a place where there is a public highway running parallel with and adjoining its right of way, and if the stock sued for came upon defendant's track by reason of a failure to fence at such place, they should find for defendant.

3. If the jury believe from the evidence that the stock sued for was struck on defendant's track between the Messick public road crossing and Clarence station, and that in the year 1870 there was a public highway located on a line with the south boundary of defendant's right of way and adjoining and running parallel with said right of way between said Messick crossing and Clarence, then defendant was not bound to fence on the south side of its track between said points, and plaintiffs cannot recover for failure to fence at said place, in this case, and they should find for defendant.

4. If the jury believe from the evidence that the fence, where plaintiffs' stock sued for in the third count of the petition went through and upon defendant's track, was originally a good and sufficient fence four and one-half feet

high, and that it had been repaired the night before the stock sued for in the third count of plaintiffs' petition were killed, and that defendant exercised ordinary care in keeping said fence in repair, then defendant is not liable for the stock sued for in said third count; and by ordinary care, as used in this instruction, is meant such care as would be used and exercised by an ordinarily careful farmer in keeping up his fences.

The court upon its own motion instructed the jury as follows: Unless the jury find that the defendant's fence west of Messick's crossing and along the south line of its right of way was so far defective as to permit cattle to enter upon its railroad; and unless they further find that the cattle described in the petition, or some one or more of them, did by reason of such defects in said fence, enter upon defendant's railroad, they should find a verdict for defendant upon all the counts in the petition.

The jury found the issues for the plaintiffs, except as to one of the cows killed on the road crossing. The defendant brings the case here on appeal.

I. It is insisted that the court erred in refusing the second and third instructions asked by the defendant. The evidence showed that on the south side of defendant's road-way was "uninclosed prairie lands." Unquestionably then, by the 43rd section of the statute in question, it was the duty of defendant to erect and maintain a good and substantial fence on that side of its road. But defendant claims that inasmuch as a county road had been laid out and used, running parallel with the railroad track, and next to the right of way, its road did not pass "along or adjoining uninclosed prairie lands." This construction of the statute is too extreme. It is contrary to both its letter and spirit. The statute must be construed in reference to the object sought to be attained by the legislature, and language employed must be "understood in its plain, ordinary, popular sense." *Burnam v. Banks*, 45 Mo. 350. The recognized object of this and

1. RAILROADS: their duty to fence.

similar statutes is to afford, not only protection to private property, but to the lives and limbs of passengers traveling on the railroad.

As such " uninclosed prairie land " was likely to invite cattle running at large, and their known propensity, amounting to a perversity, to pass on to the railroad track, when grazing near it, it is unreasonable to say that because there is an artificial highway next to the railroad, the duty to fence ceases. The county road is on the prairie land. It does not cease to be " uninclosed prairie land " because a county road runs over it. Suppose it had been a natural water-way, a common creek forty or sixty feet wide, instead of an artificial road-way, would the obligation to fence between it and the railroad-way be removed? This question was expressly decided in *Robinson v. C. & A. R. R. Co.*, 57 Mo. 494. It is true the reasoning of Wagner, J., is criticised in *Walton v. St. Louis, I. M. & S. R'y Co.*, 67 Mo. 56, but I do not understand that its authority is overturned. Both of these cases, in my opinion, are correct, and may well stand together. They afford an illustration of a truth which good practitioners too often overlook, that a principle of law remains the same, but the particular facts of each case may limit the application. Redfield R'y, (5 Ed.) 516, 517; *Tredway v. S. C. & St. P. R. R. Co.*, 43 Iowa 527.

II. The only remaining question raised is the refusal of the court to grant the fourth instruction asked by defendant. The statute makes it the duty of railroads to erect and maintain good fences. It does not perform its duty to the public by merely erecting a fence. It must keep it up and in repair. It does not, however, become the absolute insurer of the fence. The fence is liable to many casualties, against which no reasonable care and vigilance could guard. A wind storm, a water freshet, a fire, breachy stock or trespassers might destroy it. In such case it would be utterly unreasonable to hold the corporation liable for stock killed which entered through a defect thus occasioned. The law allows reason-

able time to discover the defect and repair it. In other words, it holds the company to the exercise of due care and no more. *Clardy v. St. Louis, I. M. & S. R'y Co.*, 73 Mo. 576; *Case v. St. Louis & St. F. R. R. Co.*, 75 Mo. 668.

The law deals, as it should, with a railroad in this respect, as with an individual. It exacts of it the exercise of ordinary care. But there is often a misapprehension of the term "ordinary care." It is a relative term. It must necessarily be measured by the nature of the case, the hazard, the situation. It "means simply the caution and vigilance which reasonable and prudent men exercise under like circumstances." Shearman & Redfield Neg., §§ 20, 23; *Cayzer v. Taylor*, 10 Gray 280; Thompson Neg., 2 vol. 982, 983; *Flynn v. Kansas City, St. Jo. & C. B. R. R. Co.*, *ante*, p. 195. Manifestly then the fourth instruction in question ought not to have been given, for it proceeds to tell the jury that "by ordinary care, as used in this instruction, is meant such care as would be used and exercised by an ordinarily careful farmer in keeping up his fences." The duties and situation of a farmer in respect of keeping up his fences, are unlike those of a railroad company. The farmer keeps up his fences as a means of protecting his own premises. He owes no public duty in the matter. He alone can suffer by not having a fence. He may suffer his premises to go unfenced. Stock in going on to his premises incur no peril. He has running to and fro over his farm at a speed of twenty miles an hour, no massive machinery freighted with human life, and destructive to any beast in its pathway. What would be ordinary care in the farmer might be gross negligence in the railroad. The teamster who drives his plodding team over the highway must exercise "ordinary care" to avoid collisions and injury to others on the road. So must the engineer in running his train exercise "ordinary care." But could it be said that the engineer rushing with his terrible engine on two narrow rails, with five hundred human lives suspended on his hands and eyes, should keep no keener or more cease-

Rutledge v. The Hannibal & St. Joseph Railroad Company.

less vigil than the ordinary teamster? The situation is different, the peril and the duty greater. The instruction in the form it was asked, was properly refused.

It may be as well to observe, too, that where the first two injuries occurred, there was no pretense that the fence was in repair. In respect of the occasion of the last injury, the bill of exceptions shows, on defendant's part, that "the fence had been out of repair before, yet at the time said stock was killed, it was in places in ordinarily good condition and sufficient to keep out stock, if it had not been breachy and inclined to break through." This was in effect an admission that along the point in question there were places not in ordinarily good condition; and at its best it was only "in ordinarily good condition." It is not stated to be "a good substantial fence," as required by the statute. The breachy inclination of the stock has nothing to do with this question. If the railroad company complies with the statute, it may, in the absence of other negligence, run over and kill any stock trespassing on its right of way. If it fails to have the statutory fence, it may not kill, even a breachy animal. There was, therefore, scarcely evidence sufficient to justify the fourth instruction. The case seems to have been fairly tried, and, therefore, the judgment of the circuit court is affirmed. All concur.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment of the circuit court is affirmed. HOUGH, C. J., concurs in the result. The case of *Robinson v. R. R. Co.*, 57 Mo. 494, was a suit for single damages.