John M. Jones, Respondent, *v.* The Wabash, St. Louis and Pacific Railway Co., Appellant.

### March 23, 1885.

1. Railroads—Duties and Burdens Thereof—Obligations to the Public.—Among the duties of railroads to the public is the obligation to provide and furnish suitable cars for carrying passengers and transporting freight; to build and maintain stations and depots at necessary and reasonable points on their roads for the accommodation of the public taking passage on their cars and freighting over their line of road; and to afford every reasonable facility for procuring tickets, or the right of passage, and transportation of freight. *As to such passenger trains*, the citizen has the unquestionable right to enter them at any such station, or points where the trains usually stop. * * * * But in respect of their trains for transporting freights, a different principle obtains and is well recognized. Where they provide the requisite trains and cars for the accommodation of passengers, they have the right to prescribe that passengers shall go upon them and not otherwise. In such case the law does not compel the company to carry passengers *upon its freight trains*. It requires it to carry both passengers and freight, but leaves it to

such corporation to· regulate the manner in which the same shall be done.  After providing both passenger and freight trains, the company may exclude passengers from the one and freight from the other.—Rorer on Railroads, vol. 2, p. 985 ; Thompson on Carriers of Passengers, p. 343.

2. SAME—LIABILITY BY OWN ACT.—But companies may make themselves answerable to a different liability by habitually carrying passengers on its freight trains ; or by holding itself out to the public as so doing ; or by failing to give any notice of its regulations ; or by failing, at an established depot where it keeps tickets for sale, to afford the passenger an opportunity to procure a ticket.

APPEAL from Livingston Circuit Court, HON. JAMES M. DAVIS, Judge.
*Reversed.*

Statement of case by the court.

This is an action to recover from the defendant, a railroad corporation of this state, damages for wrongfully ejecting the plaintiff from one of its freight trains on the 5th day of August, 1881.  The principal facts are, that the plaintiff resided at or near a station on defendant's road in Livingston county, named Sampsel. At this place defendant at one time had an agent; but long prior to the date above . named, such agent had been discontinued, and no depot was maintained there, nor were tickets· sold there for passage on any of defendant's trains.  While such agency was maintained at this station, tickets were sold, and passengers did ride on the freight trains of defendant.  On the first day of May, 1881, the defendant issued the following orders or regulations :

"WABASH, ST. LOUIS AND PACIFIC RAILWAY.

Notice to Passengers and Employees in Regard to Carrying Passengers on Freight Trains.

1st.  Passengers are not allowed to ride on freight trains without tickets, which . will be sold by ticket agents for such regular freight trains as are permitted carry to passengers, and are designated by the time

table as stopping at the station where, and the one to which ticket is sold.

2nd.  Passengers will not be carried on extra freight or working trains, but only on such regular freight trains as are permitted to carry passengers, and are noted on the time table as stopping at the station thereon specified.

3rd.  Agents will sell tickets for all such regular freight trains as specified above, but in no case must tickets be sold to a point beyond the run of the conductor of the train.

4th.  Conductors of regular freight trains permitted to carry passengers must see that their cabooses are stopped at platforms at all way stations at which they are noted on the time table to stop.

5th.  Stop-over tickets are not issued by freight train conductors.  Passengers should purchase tickets only to the point at which they wish to leave the train.

6th.  Conductors of freight trains must not collect passenger fares under any circumstances.  They must see before they leave a station that passengers are provided with tickets.

7th.  Conductors of all irregular and extra trains must keep their cabooses locked and not carry passengers on such trains.

8th.  These rules are imperative, and conductors and agents will be required to enforce them rigidly.  In case of complaints arising under them, passengers should be referred to the General Ticket Agent."

These regulations were duly posted up at all regular stations along the road and in the cabooses of the freight trains.  Whether such notice was posted up at Sampsel does not clearly appear.  There was evidence on the part of the plaintiff tending to show that passengers, after the date of the publication of said regulations, were received on the freight trains and departed from them at Sampsel; but whether they had tickets or not is not clear.  The defendant's evidence tended to show that freight trains, after the discontinuance of the

agent at that point, did not stop there for passengers; sometimes they stopped perhaps to discharge freight, and trains often met there, and therefore, the freight first at the switch waited for the other's arrival. Defendant's evidence showed quite clearly that after the publication of said rules no passengers were received at said station, and that no passengers were permitted or carried on the freight trains without having procured a ticket before entering the train at any point. Regular passenger trains passed daily over the road, and took on passengers at Sampsel station. The plaintiff knew there was no agent at Sampsel, and that no tickets were sold there. His own evidence disclosed the fact that citizens of Sampsel had, during the summer of 1881, prior to August, been refused admission to the freight trains, and were ejected therefrom because they did not have tickets; and that he himself had been ejected therefrom. He also testified that he had that summer, prior to his attempt to ride on the freight train, heard the conductor of one of defendant's freight trains tell a man that he was not allowed to carry passengers without their having obtained a ticket before entering the car, and that he would not take from him any fare in lieu of such ticket.

He testified that he went to one Bird of Sampsel on the 5th of August, and tried to get a ticket from him before entering the freight car. When the train on that day pulled out of the switch, plaintiff was found in the caboose by the conductor, who demanded of him a ticket. He did not produce one, but tendered what he conceived to be the regular fare in money, and also offered to buy a ticket when he reached his destination, and give it to the conductor. This was declined by the conductor, and the plaintiff was compelled to leave the car.

He then walked to Chillicothe, and was delayed in reaching there, beyond the time required to go on the train, some five hours. He sued for five hundred dollars damages.

The case was tried by the court sitting as a jury. The court, at the instance of plaintiff, gave the following declaration of law:

1. "If the court, sitting as a jury, believes from the evidence in the case that the defendant carried passengers to and from Sampsel station on its freight trains regularly, and that the defendant held itself out as ready to do so, and that the plaintiff in this case took passage on one of defendant's freight trains to go from Sampsel to Chillicothe, Missouri, and that before taking passage on said train, plaintiff applied at the depot of defendant at said place for a ticket, but could not get a ticket because defendant kept no ticket agent at said station, nor provided tickets at said station for passengers, and that when so on said train plaintiff tendered to the conductor of defendant's said train the regular fare for passage from said Sampsel station to said Chillicothe, and that defendant's said conductor refused to receive said fare, but stopped said train and expelled plaintiff from said train, it will find for plaintiff and assess the actual damages that plaintiff may have sustained at a sum not to exceed the sum prayed for in plaintiff's petition; notwithstanding the court may believe from the evidence that the defendant had a regulation that no one could be a passenger on its trains without a ticket issued by the company, and that he should be expelled unless he had such a ticket, if the court believes that defendant furnished no proper and convenient facilities for passengers to obtain tickets at said Sampsel station."

The court refused the following declaration of law requested by defendant:

1. "The court finds that under the pleadings and evidence in this case the plaintiff is not entitled to recover, and the finding and judgment must be for the defendant."

The court also refused other declarations, and gave others, requested by the defendant. As they are not deemed essential to the determination of the case they

are omitted from this statement. The court then found the issues for the plaintiff, and assessed his damages at five dollars, and rendered judgment accordingly.

From this judgment defendant prosecutes this appeal.

WELLS H. BLODGETT and GEORGE S. GROVER, for appellant.

I. Defendant's rules in evidence were reasonable and lawful, and until plaintiff had shown a compliance with them upon his part, he was not a passenger, and therefore not entitled to ride upon defendant's freight train. The principle is well settled that a railway company is not a common carrier of passengers upon its freight trains.—Rorer on Railroads, vol. 2, sect. 18, p. 985; Thompson on Carriers, etc., p. 343; *C. & A. R. R.* v. *Randolph*, 53 Ill. 510; *Falkner* v. *O. & M. R. R.*, 55 Ind. 369.

II. Althought the rules of defendant excluded him from that train, and he knew it, yet he intended to take passage thereon, and sue for damages if such passage was denied him. His position was that of a trespasser. He never was a passenger, and never acquired at any time the rights of a passenger, and was rightfully ejected. —*Lillis* v. *St. L., K. C. & N. Railway Co.*, 64 Mo. 464; *Brown* v. *M. K. & T. Ry. Co.*, 64 Mo. 536; *Logan* v. *H. & St. Jo. R. R.*, 77 Mo. 663; *Dietrich* v. *Pa. R. R.*, 71 Penn. St. 432.

III. The theory of the court below was that the rule requiring tickets on such trains was reasonable, but to enforce it ticket offices must be provided. The history would be correct if the train which plaintiff attempted to ride upon had been advertised and held out to the public as one which carried passengers from that station. But the freight train in question was not such a train.

IV. The instructions given were erroneous, while the refused instructions correctly declared the law applicable to the facts in evidence. The 1st instruction assumed a fact not in evidence and announced a rule of law not applicable to the facts proven. The 2d and 4th instruc-

tions for defendant were based on the evidence and correctly declared the law applicable thereto, but the 2d is inconsistent with the 1st given for plaintiff. The question of defendant's right to abandon its depot could not be raised in this proceeding.—*Martindale* v. *K. C., St. Jo. & C. B. R. R. Co.*, 60 Mo. 510 and cases cited; *Kennedy* v. *St. L., K. C. & N. Ry.*, 69 Mo. 663.

No brief on file for respondent.

Opinion by PHILIPS, P. J.

While the judgment in this case is for a trivial sum, and should, ordinarily, in the interest of peace, be endured rather than occupy the attention and valuable time of the appellate courts with a review, yet the case presents a question alike important to the public and the railroad company.

Railroad corporations, in consideration of the grant by the state of a franchise, conferring upon them valuable rights and privileges, assume certain duties and burdens to the public and the citizen. Among these is the obligation to provide and furnish suitable cars for carrying passengers and transporting freight, to build and maintain stations and depots at necessary and reasonable points on their roads for the accommodation of the public taking passage on their cars and freighting over their line of road, and to afford every reasonable facility for procuring tickets, or the right of passage, and transportation of freight. As to such passenger trains, the citizen has the unquestionable right to enter them at any such station, or points where the passenger trains usually stop. And while the railroad companies may prescribe reasonable rules requiring persons, before taking passage on their passenger trains, to procure and exhibit tickets entitling them to ride thereon, yet, in order to the enforcement of such regulation, they must provide every reasonable facility and opportunity to enable such passengers, without unnecessary detention and inconvenience, to first obtain such ticket. In the absence of such facility and

opportunity they may neither reject a passenger apply-
ing to ride, nor eject him after he has entered the car
without his having such ticket, if he offer to pay the
usual fare.

But in respect of their trains for transporting freights
a different principle obtains and is well recognized.
Where they provide the requisite trains and cars for the
accommodation of passengers, they have the right to
prescribe that passengers shall go upon them and not
otherwise.   In such case the law does not compel the
company to carry passengers upon its freight trains.   It
requires it to carry both passengers and freight, "but
leaves it to such corporation to regulate the manner in
which the same shall be done."—*Ill. Cen. R. R.* v. *Nel-
son,* 59 Ill. 110 ; *Evans* v. *Mem. & Charlest. R. R.,* 56 Ala.
246 ; 18 Amer. Rwy. Rep. 350.

After providing both passenger and freight trains, the
company may exclude passengers from the one and freight
from the other.—*Cleveland & Cin. R. R. Co.* v. *Bartman,*
11 Ohio St. 459 ; *Dunn* v. *G. T. Ry. Co.,* 58 Me. 187.

Likewise may the company, even where it permits
passengers on its freight trains, require, as a condition to
their admission, that they shall procure a ticket before
entering the car.   Such a regulation is not only reason-
able, but may be necessary for the protection of the
interests of the company.—*C. B. & T. R. R.* v. *Parks,*
18 Ill. 460 ; *Law* v. *R. R. Co.,* 32 Iowa 534.

Rorer, in his valuable Treatise on Railroads, vol. 2, p.
985, sect. 18, succinctly states the law as follows :   "The
law does not compel railroad corporations to carry pas-
sengers upon freight trains, nor freight in their passen-
ger coaches; it only requires them to carry both, but
leaves it to such corporations to regulate the manner in
which the same shall be reasonably done.   It being a mat-
ter of choice with them whether, and upon what terms,
they will carry passengers upon trains for freight, the
right, therefore, devolves on themselves to fix the same,
and it is held that it is not an unreasonable regulation

that they shall only be carried on freight trains by procuring tickets before entering thereon. * * * The company may make and enforce rules against carrying passengers upon freight trains; but if they hold themselves out to the public to carry passengers on such trains, then they are bound to carry accordingly to the extent, and in the manner, in which they thus profess to the public an intent to carry, and must afford a reasonable opportunity to obtain tickets as in other cases, or else may not discriminate as for want of tickets."

The text is fully supported by many adjudications, and by Thompson on Carriers of Passengers, p. 343.

Applying the law to the facts of this case, I am unable to see how we can sustain the judgment of the circuit court. There is little ground for controversy as to the material, controlling facts. The uncontradicted evidence is, that the defendant provided the necessary passenger trains over its road at the point where the plaintiff entered defendant's freight train. There is no claim made here that the passenger train did not afford reasonable accommodation for persons desiring to take passage at Sampsel station. The evidence is equally clear that Sampsel was not then a regular station for the stopping of freight trains for passengers. There was no agent or depot in fact to enable plaintiff to obtain a ticket, and this fact he well knew before entering the caboose in question. It is also clear that the defendant had indicated on its printed time cards, posted in its depots and cabooses, that its freight trains did not stop at Sampsel for passengers. It furthermore appeared by the uncontradicted evidence, that the regulations of the company prohibited passengers from entering the freight cars, at any point, without having first procured a ticket from an agent of defendant. Every reasonable publicity was given by defendant, for three months prior to the occasion in question, of this regulation. An impartial and attentive reading of the evidence in this record leaves no reasonable doubt that the plaintiff knew, or had every

just reason to believe, that he would not be permitted to ride on the freight train without having provided himself with a ticket. This is evident to my mind from the fact that on the day and before entering the car, he tried to obtain a ticket from a friend in Sampsel. He also was in the habit of travelling over this road. The regulation in question was conspicuously posted in all the depots and cabooses of the road. He knew others had been expelled from the cars for not having tickets. He himself, for some unexplained reason, had, only a month or so previous, been ejected from one of defendant's freight trains on this same portion of road. He was also present on a freight train and heard the conductor tell another passenger that the rules of the company forbade him from carrying passengers on his train without a ticket, and that he could not accept from him the money in lieu of such ticket.

On this showing, the case being before the judge as the trier of both fact and law, we are of the opinion the instruction asked by defendant, that, on the law and the evidence, the verdict should be for the defendant, should have been given.

The first predicate of the instruction given on behalf of plaintiff was that the defendant should have carried passengers from and to Sampsel station regularly on its freight trains and held itself out ready to do so, and that plaintiff had applied in vain at defendant's depot for a ticket.

As we have already shown, from the mere statement of the evidence, the facts essential to support this declaration of law are wanting.

The latter part of the instruction would seem to advance the proposition that it was the duty of the company absolutely to furnish facilities for obtaining tickets for passengers on its freight trains, notwithstanding its time-table to the contrary, and notwithstanding the plaintiff may have known of said regulations at the time he entered the caboose. It was doubtless because of the

entertainment by the learned judge of the idea that the law demands of the company the maintenance of depots, agents, and tickets for passage on its freight trains as well as on its passenger trains, that he saw his way to a verdict for the plaintiff.

There are cases, such as those of *Railroad Co.* v. *Kesser* (18 Kan. 523) ; *C. & A. R. R.* v. *Flagg* (43 Ill. 364) ; *I. C. R. R.* v. *Johnson* (67 Ill. 312) ; *Myrtle* v. *Rwy.* (51 Ind. 566); and *Evans* v. *M. & C. R. R. Co.* (56 Ala. 246), which go far towards fixing a liability on the companies. But a careful examination of the decisions shows that they announce no doctrine in conflict with this opinion. As is observed in *Rutledge* v. *H. & St. Jo. R. R.* (78 Mo. 291): "They afford an illustration of a truth which good practioners too often overlook, that a principle of law remains the same, but the particular facts of each case may limit the application." They rest mainly on the facts that the company either habitually carried passengers on its freight trains, or held itself out to the public as so doing, or had failed to give any notice of its regulations requiring passengers to provide themselves with tickets, or failed, at an established depot where it kept tickets for sale, to afford the passenger an opportunity to procure a ticket in time to get on the train. We have been unable to find any respectable authority which goes to the extent of justifying a recovery under facts and circumstances similar to these disclosed in this record.

The plaintiff, entering the caboose under the circumstances and with the knowledge he had, was in no better situation than a trespasser, and his offer to pay the fare to the conductor did not alter his right or his liability.

It follows that the judgment of the circuit court is reversed. All concur.