EDMUND BURKE, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 5, 1892.

1. **Railroads:** PASSENGER ON FREIGHT TRAINS: CUSTOM. If it is the custom of a freight train to carry passengers though forbidden by the company's rules to do so, of which rules there was no notice save on the time table for the use of its trainmen; and if a person knowing of the custom but not of the rules enter the caboose of said train to be carried, and has no notice of the rules until after the train has started, he becomes a passenger, and cannot be ejected if he offers to pay his fare.

2. ———: ———: ———: BURDEN OF PROOF. When a person enters a freight train forbidden to take passengers, though habitually accustomed to do so, the burden of proof is upon him to show the custom and justify his action.

3. ———: ———: ———: PRESUMPTION: PUBLIC. The conductor, like the master, must be presumed to know the custom and habit of carrying passengers on the train, where it has prevailed for a year or more; and as to the public the custom has modified the rule, and can only be abrogated by notice.

4. ———: ———: CUSTOM: DUTY OF CONDUCTOR. Where a person having knowledge of the custom of a freight train to carry passengers, and relying on such custom enters said train for the purpose of passage, it is the duty of the conductor if he intends to obey the rules and disregard the custom to give notice thereof when he entered.

5. Practice, Appellate: REVIEWING VERDICT. Where the jury has determined the weight of evidence, it is not matter open to review in the appellate court.

6. Railroads: PASSENGERS ON FREIGHT TRAINS: CUSTOM: EJECTING. A person who enters a freight train which habitually carries passengers, and at the time receives no notice that he cannot ride thereon, becomes a passenger as he would on a regular passenger train, and cannot be ejected if he offers to pay his fare.

7. Verdict: EXCESSIVE. A verdict of $300 is not excessive in this case.

*Appeal from the Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*H. S. Priest* and *Wm. S. Shirk*, for appellant.

(1) In the absence of notice to the public, that it will carry passengers on its freight trains, a person is bound to take notice from the kind of train, its make-up, and the kind of cars of which it is composed, that it is only a freight train, and not intended to carry passengers. *Powers v. Railroad*, 153 Mass. 188; *Files v. Railroad*, 149 Mass. 204; *Eaton v. Railroad*, 57 N. Y. 383. An agent cannot bind his principal by violating his orders, unless it be shown

that the principal knew of such violation and acquiesced in it. *Eaton v. Railroad*, 57 N. Y. 382; Wood's Railway Law, 1083; *Smith v. Railroad*, 124 Ind. 395; *Windsor v. Bank*, 18 Mo. App. 665; *Moore's Ex'r v. Pattison*, 28 Pa. St. 505; *Baldwin v. Burrows*, 47 N. Y. 211; *Russell v. Railroad*, 47 Fed. Rep. 204. (2) The evidence establishes beyond dispute that the conductors of this train, number 125, were commanded by the printed rules of the time card, and by the general and special orders of the division superintendent, not to carry passengers on that train. No notice or knowledge was brought home to any officer of the defendant, that these orders were being disobeyed, nor is there the least suspicion that any of defendant's officers knew of or acquiesced in any habit or custom of any of the conductors to carry passengers in violation of this rule. (3) The fact that the rule prohibiting this train from carrying passengers had been violated, and that one or more of defendant's conductors had permitted plaintiff and others to ride on such train, did not deprive Conductor Leonberger of the right to enforce his orders, nor did it deprive the company of the right to enforce its orders at any subsequent time. *Hobbs v. Railroad*, 49 Ark. 357. (4) The evidence did not show a custom or habit of the company to carry passengers on this train. Hence, it was error to admit the evidence of plaintiff and others to show that they had previously ridden on other trains with other conductors. *Windsor v. Bank*, 18 Mo. App. 365; *Hyde v. Larkin*, 35 Mo. App. 365. (5) The verdict is grossly excessive. He lost no money. Not even a hand was laid upon him, nor was he insulted or treated with the least rudeness.

*Draffen & Williams*, for respondent.

(1) It is also true that "where a railroad company regularly carries passengers by a freight train, it thereby

becomes a common carrier of passengers by such freight train, and has no more right to expel a passenger therefrom without cause than from a regular passenger train." Such company, after having habitually received and carried passengers upon a freight train, may not arbitrarily expel a passenger therefrom, who began his journey upon said train in reliance upon such custom, and in ignorance of any rule forbidding it to carry passengers. *Jones v. Railroad*, 17 Mo. App. 158–168; *Railroad v. Flagg*, 43 Ill. 364; *Railroad v. Kesser*, 18 Kan. 523; *Bown v. Railroad*, 16 Pac. Rep. 942; *McGee v. Railroad*, 92 Mo. 208. (2) The jury so found the facts, and there was certainly evidence tending to prove these facts. There was no error, therefore, in giving the instruction. The weight of the evidence is not a matter to be passed upon here. *Swayze v. Bride*, 34 Mo. App. 414; *Millan & Abbott v. Porter*, 31 Mo. App. 563; *Krider v. Milner*, 89 Mo. 145. (3) The court did not err in permitting plaintiff and the other witnesses to testify that passengers were habitually carried upon this freight train, and the objection interposed to this evidence was properly overruled. *McGee v. Railroad*, 92 Mo. 208–217. (4) The conductors, who had charge of this train, represented the defendant corporation in the management and control thereof. When they received passengers aboard of said train, it was the act of the defendant, and the defendant is bound by their acts and conduct in habitually carrying passengers thereon, and thereby holding said train out as a passenger-carrying train. "The corporation was present aboard of the train in the person of the conductor." *Whitehead v. Railroad*, 99 Mo. 263; *McGinnis v. Railroad*, 21 Mo. App. 399. If, however, it was necessary to show that some officer, other than those placed in charge of of the train, and representing the defendant in

the management thereof, had notice of this usage and custom, still this need not be shown by direct evidence. It may be inferred from the notoriety of the custom. *Barry v. Railroad*, 98 Mo. 69. (5) The defendant cannot justly complain of the manner in which the jury were instructed as to the measure of damages, nor of the amount of the verdict. The damages were very moderate indeed for such an experience. *Railroad v. Howerton*, 26 N. E. Rep. 792; *Sezwe v. Railroad*, 50 N. W. Rep. 1021; *Railroad v. McClanahan*, 1 S. W. Rep. 576.

SMITH, P. J.—This suit was brought by plaintiff to recover damages for his wrongful expulsion from one of defendant's trains.

It appears from the undisputed evidence in the case that the defendant's freight-train conductors were forbidden by its rules to carry passengers except on certain designated trains; that there was no notice of this, other than was to be found on the time table which was provided for the government of those persons who were engaged in the defendant's train service. The plaintiff entered the caboose attached to freight train number 125, which was not one of the designated passenger-carrying freight trains. When the plaintiff entered the caboose the conductor was not there though several other persons were, who were all strangers to plaintiff. The conductor came into the caboose some time after the train had proceeded on its way several miles. When it had reached Scott's Station, the first station out from the place where plaintiff went on board the train, the conductor informed the plaintiff that he must there get out. The plaintiff responded that he was in the habit of riding on that train, and that he wanted to pay his fare to California. The conductor replied, "No, sir; you must leave the train,"

which the plaintiff accordingly did. The plaintiff inquired of the defendant's telegrapher in charge of the station whether he knew of any place where he could stay all night, whose reply was that he did not. The plaintiff then in company with another person who had also been expelled from the train started west to Center Town which was the next station, seven miles distant, where the first passenger train going west would stop. The plaintiff reached there in time to take the train home that night. He testified that he was sixty years old, and that by reason of the fatigue and exposure in the night air, etc., to which he was thus subjected, he was made sore, sick, etc.

In addition to these facts, it appears by the instructions that the jury found from the evidence the further facts to be that the plaintiff, on the fourth of October, 1889, at Jefferson City, Missouri, entered the caboose attached to one of defendant's trains, and took passage thereon for the city of California, and that defendant's officers and its agent in charge of said freight train at and for a long time prior to said date had habitually received and carried passengers upon said freight train between Jefferson City and California, and said train had, by the actions and conduct of defendant's agents and servants in charge thereof, been held out to the traveling public, as a passenger-carrying train between said points, and *that plaintiff knew of the custom to carry passengers on said train, and had no notice of any rule of defendant prohibiting the same until after said train had left Jefferson City;* that the plaintiff offered to pay the usual and customary fare for passage from Jefferson City to California, and that the defendant's conductor required him to leave the caboose before reaching his destination; that the plaintiff at the time he entered defendant's caboose did not know that the conductor of that train was not permitted by the rules

of the company to carry passengers thereon; and was not informed by anyone of the defendant's brakemen when he entered the caboose that the train did not carry passengers.

The question is whether on these facts the plaintiff was entitled to recover. The supreme court of this state in *McGee v. Railroad*, 92 Mo. 208, quotes approvingly a paragraph, from 2 Wood on Railways, page 413, to the effect that a person is entitled to the rights of a passenger, who goes aboard a freight train, notwithstanding the rules forbidding passengers to ride on such trains, if it is shown that passengers have been habitually carried upon such trains. And a like recognition of this rule is found in *Jones v. Railroad*, 17 Mo. App. 158. In *Railroad v. Moore*, 49 Texas, 31, it is said that "it may be true, when a railroad company habitually permits passengers to travel on its freight trains, notwithstanding it may by regulation prohibit it, that the company will incur the same responsibility to such passengers as if they were on the regular passenger cars. But when it is shown that the regulations of the company absolutely forbid passengers riding on freight trains, and where there are no cars attached to such trains except those ordinarily accompanying trains exclusively for freight, or such as, by their appearance and manner in which they are fitted up, could not be properly regarded as inviting passengers into the train, the burden of proving that the party injured was justified in going into such train as a passenger properly devolves upon those who sue for damages resulting from injuries sustained by him while on such train."

And a similar ruling was made in *Lucas v. Railroad*, 33 Wis. 41, which was a case where a railroad company habitually carried passengers upon many of its regular and ordinary freight trains, and a person

went on board a freight train believing that the train carried passengers, and received no information to the contrary, etc.

The conductor in charge of the train in which the plaintiff entered acted for defendant. He was master of the train. The master must be presumed to have known of the custom and habit of carrying passengers on this train, for the reason that it appears that this custom and habit was notorious, and had prevailed for a year or more. Its effect as to the public was to modify the rules and regulations of the company forbidding the carrying of passengers on that train. If defendant wished to abrogate this usage and habit, it should have given notice to persons entering its trains for the purpose of taking passage, that they could not do so, instead of permitting them to enter without objection, and after the train was under way for the first time to notify them that they could not ride, and must leave the train. It seems to us that a passenger entering the caboose to defendant's train, under the facts of this case as found by the jury, without timely notice that that train would not carry passengers, was entitled to the rights of a passenger, and could not be ejected therefrom, unless he declined to pay his fare, or otherwise misbehaved.

The defendant was not bound to carry the plaintiff as a passenger upon its freight train, number 125. *Whitehead v. Railroad*, 99 Mo. 263. But, since it had been its custom and habit to do so, and the plaintiff having knowledge of such custom and habit, and relying on the same, entered such train for the purpose of passage, it was the duty of defendant's conductor, if he intended to obey the rules of the company, and to disregard the custom and habit which had grown up in respect to that train, and so not to carry plaintiff as a passenger to his place of destination, to have given him

notice of that fact when he entered the train, and not having done so the plaintiff must be held to have been received as a passenger. He was entitled to ride to his place of destination on paying or offering to pay the usual fare, and his expulsion from the train by defendant's conductor was a breach of the duty the defendant owed the plaintiff. It follows from what has been said that the plaintiff was not wrongfully, but rightfully, on the defendant's train at the time of his expulsion therefrom, and that plaintiff was, as a matter of law on the facts found by the jury, entitled to recover. No error is perceived in the action of the court in giving or refusing of instructions.

The defendant contends that the evidence did not show a custom or habit of the defendant to carry passengers on the train in question. It is a sufficient answer to this to say that there was substantial evidence admitted, and, properly, too, according to the ruling in *McGee v. Railroad*, *supra*, which tended to show that the defendant had habitually carried passengers on this train. It is true defendant adduced opposing evidence, but the jury having, by their verdict, determined the weight of the evidence as was their function to do, it is not a matter open to review here by us. *Swayze v. Bride*, 34 Mo. App. 414; *Millan & Abbott v. Porter*, 31 Mo. App. 563; *Krider v. Milner*, 89 Mo. 145.

In *Hobbs v. Railroad*, 49 Ark. 357, very much relied on by defendant, it is said that, "if the defendant's freight trains had habitually carried passengers in spite of the regulations to the contrary, and the conductor, on the occasion in question, had accepted fare from the plaintiff for his intended ride, the relation of passenger and carrier would doubtless have been established with all the incidents that attended that relation." According to this rule the plaintiff's relation

Woods v. The M., K. & T. Ry. Co.

of passenger to the defendant carrier is made to depend upon whether, after being lawfully on the train, the conductor accepted from him his fare. It is apprehended that, if the plaintiff was lawfully on the train, he could not be ejected as a trespasser, if he offered to pay his fare. A person who enters a freight train which habitually carries passengers, and who, at the time, receives no notice from those in charge of the train that he cannot ride on it, will sustain the relation to the company while riding on the train to his place of destination that he would had he entered a regular passenger train. If he offers to pay the customary fare to the place of destination, he cannot be ejected, whether the conductor accepts his fare or not. An offer to pay the fare is equal to its payment and acceptance by the conductor. The plaintiff's right cannot be made to depend upon the mere whim of the conductor.

In view of the facts which the evidence conduces to prove, and which have already been referred to, we cannot disturb the verdict, which was for $300, on the ground that it was excessive. The injuries complained of seem to have been the direct and proximate consequences of the wrongful expulsion. We think the judgment should be affirmed. All concur.