# THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

# EUGENE FLAGG.

1. RAILROAD COMPANIES — *when common carriers of passengers — by freight trains.* Where a railroad company regularly carries passengers by a freight train, and so holds itself out to the public, it thereby becomes a common carrier of passengers by such freight train, and has no more right to expel a passenger therefrom without cause than from a regular passenger train.

2. SAME — *may make reasonable rules for conducting its business.* Railroad companies have the power to make all reasonable rules for the government of their trains; and, as to certain classes of trains, they may require tickets to be purchased before entering the train.

3. PASSENGERS — *violating rules — penalty for.* A passenger who knowingly disregards the rule requiring tickets to be purchased before taking passage, is upon the same footing with one who refuses to pay fare, and may be expelled at any regular station.

4. SAME — *may take passage without procuring a ticket, when prevented by neglect of company's agents.* When a railroad company requires tickets to be purchased at the station, facilities must be furnished to the public, by keeping open the ticket-office a reasonable time prior to the time fixed for the departure of the train, and a failure to do so gives the right to a person desiring to take passage to enter the train and be carried to his place of destination by payment of the regular fare to the conductor; and, under such circumstances, his expulsion would be unlawful.

5. SAME — *willful neglect by — to comply with rules — not subject to expulsion — except at a regular station.* When a passenger willfully neglects to purchase a ticket, as required, before entering the train, he cannot be expelled at a place other than a regular station.

6. STATION — *definition of — local usage cannot create.* A water tank, even if a "usual stopping place for trains," is not, within the spirit of the law, a regular station. A regular station means the usual stopping place for the discharge of passengers; and a local usage, adopted by persons, of getting on or off a train, for their own convenience, at a place other than the regular station, does not make such place a regular station for the discharge of passengers.

7. DAMAGES — *under what circumstances may be more than nominal — when no actual damage sustained.* Where a passenger is expelled from a train, and without fault on his part, he may recover more than nominal damages, even though he has suffered no pecuniary loss, or received actual injury to the person by reason of such expulsion.

8. SAME—*what considerations may enter into the question of.* In such case, although the proof shows that the conductor acted in good faith, and without violence or insult, and that no actual damage was sustained, still, the jury, in estimating the damages, may consider not only the annoyance, vexation, delay and risk to which the person was subjected, but also the indignity done to him by the mere fact of expulsion.

9. STATUTE—*construction of.* The phrase "usual stopping place" means, in the statute, a regular station for passengers to get on and off the trains.

10. FORMER DECISIONS. *The Chicago, B. & Q. R. R. Co.* v. *Parks,* 18 Ill 465, and the *Terre Haute, Alton & St. Louis R. R. Co.* v. *Vanatta,* 21 id. 188, considered and affirmed.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

The facts in this case are fully stated in the opinion of the court.

Messrs. WILLIAMS & BURR, for the appellant.

Mr. J. McNULTA and W. H. HANNA, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action on the case brought by the appellee against the railway company for wrongfully expelling him from one of its trains. Being desirous of traveling a short distance on the road, he entered what is called the caboose car, attached to a freight train, without a ticket. From the conversation which subsequently took place between him and the conductor, as drawn out by the defendant's counsel on the cross-examination of a witness, it appears he was unable to procure a ticket because the ticket office was closed. When his ticket was demanded on the train he offered to pay his fare, and also offered to give the conductor ten dollars to be kept by him until a ticket could be procured at the next station.

The conductor replied that he was forbidden by the rules of the road to receive money for fares, and should he do so he might lose his place. The train stopped at a water tank about a quarter of a mile from a station called Lanndale, and the conductor there required the plaintiff to leave the train. No

resistance was made by him, and no violence or insult offered by the conductor. The jury gave the plaintiff a verdict of one hundred dollars, for which the court rendered judgment.

It appears from the record that, although this was a freight train, yet it regularly carried passengers, and was held out to the public as so doing. The company itself put in evidence a printed notice, with certain regulations in regard to the carriage of passengers on freight trains, and forbidding conductors to carry them unless provided with tickets in advance. It was therefore a common carrier of passengers by this train as well as by its regular passenger trains, and would have no more right to expel a traveler, wantonly and without cause, from one train than from the other.

It is urged, that the company must have the power to make reasonable rules for the government of its trains. Undoubtedly, and if a company deem it advisable to require tickets to be purchased before taking passage on certain classes of trains, its authority to do so must be conceded. If its rules in this respect are knowingly disregarded, a passenger may be required to leave the train at any regular station, but only at such stations, as decided in the *C. B. & Q. R. R.* v. *Parks*, 18 Ill. 465. The willful neglect to comply with the rules in this matter would be like a refusal to pay the fare, and could place the passenger in no worse position. But, when the company requires tickets to be purchased at the station, it must furnish convenient facilities to the public by keeping open the office a reasonable time in advance of the hour fixed by the time-table for the departure of the train. Should it fail to do this, a person desiring to take passage would have the right to enter the train and be carried to his place of destination by payment of the regular fare to the conductor. To permit a company to complain of a violation of its own rules necessitated by the negligence of its own agents, would be absurd. If, then, as is fairly inferable from the evidence, the plaintiff was prevented from buying a ticket by the absence of the ticket agent, he was rightfully on the train, and his expulsion was unlawful.

But even if wrongfully on the train from willful non-compli-

ance with this rule, he was expelled at a place which, under the statute, rendered the expulsion itself illegal. It is urged that a water tank, if an "usual stopping place," is within the letter of the law. It is within the letter, but so obviously without its spirit, that to permit a passenger to be expelled at a water tank, often miles from a station, and remote from highways and habitations, would defeat the object of the law, and be a striking instance of "sticking in the bark." As has been several times said by this court, the statute means the usual stopping places for the discharge of passengers.

It is in proof that passengers, desiring to enter or leave the train at the Lanndale station, often did so at this water tank, as the freight train frequently passed the station itself without stopping, and the tank was only a quarter of a mile distant. It is also in proof, that passengers left at the station when the train stopped there. Whether this tank was the usual place for the discharge of passengers from freight trains, was distinctly left to the jury by the sixth instruction for the defendant, and they found it was not. Their finding was undoubtedly right. A local usage, adopted by persons living in the neighborhood and familiar with the ground, for their own convenience, can not be considered as making any place but a regular station the proper point for the discharge of passengers.

It is also urged, that, as the conductor acted in good faith, and without violence or insult, and there is no proof of actual damage to the plaintiff, the verdict should have been for only nominal damages. The verdict was for one hundred dollars. It was after dark when this affair occurred and the plaintiff was lame and had two bundles that seemed to be heavy. In order to reach the station or village, he had to pass over a covered railway bridge which spanned a stream, and which he had to cross by means of a plank walk or foot-path, about three feet wide, laid down upon the timbers. The only light came from below and from the ends of the bridge. For a stranger laden with bundles, to be compelled to walk through a dark railway bridge at night, on a narrow path, uncertain as to when a train may come, and liable to be crushed if one does

come, is certainly not a desirable experience. The jury had the right to take these things into consideration, and as the plaintiff himself had been guilty of no delinquency and was anxious to pay his fare, and as his legal rights were violated in expelling him from the train, it was proper for the jury also to consider, not only the annoyance, vexation, delay and risk, to which he was subjected, but also the indignity done to him by the mere fact of expulsion. This case is widely different from that of the *Chicago and Alton R. R. Co.* v. *Roberts*, 40 Ill. 503. We cannot say the damages were excessive.

It is urged, that the court erred in refusing the defendant's seventh instruction, which was, in substance, that, even if the plaintiff was wrongfully put off the train, yet if the conductor acted in good faith and without violence, the jury could give only such actual damages as the plaintiff sustained, or, if he sustained none, then only nominal damages. It is unnecessary to add to what we have already said on this subject. In a case of this character, where the plaintiff was without fault, the jury had a right to give more than nominal damages, even though no pecuniary loss or actual injury to the plaintiff's person was proven. The considerations above named may properly enter into the verdict in a reasonable degree. Neither did the court err in modifying the other instructions by adding, that the phrase, "usual stopping place," means in the statute a regular station for passengers to get on and off the train. That is what it does mean. *Chicago B. and Q. R. R.* v. *Parks*, 18 Ill. 465; *Terre Haute, Alton and St. Louis R. R.* v. *Vanatta*, 21 id. 188.

The judgment must be affirmed.

*Judgment affirmed.*