## GRAHAM v. PACIFIC RAILROAD COMPANY, *Appellant.*

1. **Railroads:** PASSENGER, RIGHTS OF: "STOCK PASS." A passenger who presents to the conductor a "stock pass" from the railroad company which entitles him to return on their road without payment of fare, can recover damages sustained by him, when so returning, caused by his expulsion from the cars by the conductor for non-payment of the fare, although no physical force was used, and the conductor acted under an honest misunderstanding of the rules of the company in regard to such passes, and although the passenger stated his intention to stop at a station short of that to which his pass entitled him to return.

2. ——: ——: ——. Where a passenger had the right under a "stock pass," to return on defendant's cars from St. Louis to Knob Noster, and was actually on the return trip; *Held,* that under the pass he had the right to stop at Eureka, an intermediate station, and was not liable to pay fare to the latter place.

3. ——: ——: DAMAGES, COMPENSATORY AND EXEMPLARY. A passenger can only recover for a wrongful expulsion from the car of a railroad company, such damages as he has actually sustained, and which he could not have averted by reasonable exertion, care and prudence, unless he was ejected in a wanton, rude or aggravated manner, indicating oppression, malice or a desire to injure, in which case, he may recover punitive or exemplary damages from the company, where, after knowledge of the fact, they retain in their employ, and in the same capacity, the servant who has been guilty of such misconduct.

4. **Instructions.** Where the instructions given fully embrace all that is contained in those that are refused, this court will not reverse the judgment because of such refusal.

5. **Damages:** WHEN NOT SO EXCESSIVE AS TO AUTHORIZE REVERSAL. A judgment will not be disturbed on the ground of excessive damages, where the right to recover damages was clearly established, and it does not appear that the sum assessed is so disproportionate to the injury as to bear marks of passion, prejudice or corruption on the part of the jury.

*Appeal from Johnson Circuit Court.*—HON. FOSTER P. WRIGHT, Judge.

*Ewing, Smith & Pope* with *Thos. J. Portis* for appellant.

1. The injury complained of was not committed in a wanton, rude or aggravated manner, indicating oppression, malice or a desire to injure, and therefore the damages should have been compensatory only. *Engle v. Jones,* 51 Mo. 316; *Franz v. Hilterbrand,* 45 Mo. 121; *Green v. Craig,* 47 Mo. 90; *Milw. & St. Paul R. R. v. Arms,* 1 Otto (U. S.) 489; *Fisher v. Goebel,* 40 Mo. 475; *Waters v. Brown,* 44 Mo. 302; *State v. Powell,* 44 Mo. 436; *McKeon v. Citizens R'y Co.,* 42 Mo. 84; *Hamilton v. Third Av. R. R.,* 53 N. Y. 25; *Hyatt v. Adams,* 16 Mich. 180; *Day v. Woodworth,* 13 How. 371; *Turner v. North Beach, &c., R. R. Co.,* 34 Cal. 594; *Kennedy v. North Mo. R. R. Co.,* 36 Mo. 351; *Fay v. Parker,* 53 N. H. 342; *Perkins v. M. K. & T. R. R. Co.,* 55 Mo. 202; *Stillwell v. Barnett,* 60 Ill. 219; *Brown v. Allen,* 35 Iowa 306; *Moore v. Crose,* 43 Ind. 30; *Lucas v. Flinn,* 35 Iowa 9; *Smith v. Pitts., &c., R. R. Co.,* 23 Ohio 10; *Wallace v. Mayor, &c., of N. Y.,* 2 Hilt. (N. Y.) 440; *Tripp v. Grouner,* 60 Ill. 474; *Wanamaker v. Bowes,* 36 Md. 42; *Phil., &c., R. R. Co. v. Quigley,* 21 How. 202, 214; *Dibble v. Morris,* 26 Conn. 416; *Dean v. Blackwell,* 18 Ill. 336; *Peoria Bridge Ass. v. Loomis,* 20 Ind. 235; *Ously v. Hardin,* 23 Ill. 403; *Baltimore, &c. R. R. Co. v. Blocher,* 27 Md. 277; *Hopkins v. A., &c., R. R. Co.,* 36 N. H. 9.

Conjectural damages are never allowed. Damages must be certain, and not possible, or even probable, to be the subject of recovery. Sedgw. Meas. Dam. 46, 47 (6th Ed.) The verdict was rendered for vindictive and punitory damages, and not merely for compensatory damages, or for conjectural damages, which was erroneous. There is no rule of law that would authorize the jury, under the evidence, to find a verdict for eight hundred dollars. *Whalen v. Cent. Church,* 62 Mo. 326. The defendant was not liable for the trespass of its said conductor, even if he was guilty of a willful and malicious wrong, unless defendant either authorized or ratified the act of its said conductor, of which there is not the slightest evidence.

*A. B. Jetmore* for respondent.

The damages, as assessed by the jury, are not excessive. In personal actions, the damages are not, strictly speaking, merely compensatory, i. e. for the actual outlay of money, &c., but includes all injuries—manner of expulsion, mental anguish, bodily pain, the violation of personal liberty, expenses for medical attention, &c., &c, *Chandler v. Allison*, 10 Mich. 460; 11 Mich. 542; 16 Wis. 280; 25 Ind. 321; 5 R. I. 299; 52 Penn. 238; 55 Ill. 185; 39 Ind. 509; 10 Barb. (N. Y.) 621; 53 Penn. St. 276; 48 N. H. 541; 54 Ill. 19; 1 Smith (N. Y.) 415; 2 Greenlf. Ev. §§ 272, 268. Hilliard on Torts 466, § 13. But this court will not interfere unless the damages are clearly excessive, even in cases where exemplary or punitory damages are inadmissible. 2 W. Black. 942; 3 Burr. 184; 4 T. R. 651; *Sargent v.* ———, 5 *Cowen* 106; *Coleman v. Southwick*, 9 Johns. 51; *McConnell v. Hampton*, 12 Johns. 235-6; Mason 497; *Whalen v. St. Louis, K. C. & N. R. R.*, 60 Mo. 323.

NORTON, J.—This suit was commenced in the circuit court of Johnson county. It was substantially alleged in plaintiff's petition that he had shipped one or more car loads of stock over the defendant's road from Knob Noster station to St. Louis, and in consideration of the freight paid by him to defendant, he was furnished with a "stock pass" from St. Louis to Knob Noster, by defendant; that plaintiff having said pass in his possession, and while the same was in force, was admitted into a passenger car of a train of defendant, bound from the city of St. Louis to Knob Noster; that the defendant, by one of its passenger conductors, having charge of said train, refused to honor said "stock pass" when presented by plaintiff, and refused to transport plaintiff from said city of St. Louis to Knob Noster, and unlawfully, wantonly and willfully did expel the plaintiff from said car in a disgraceful manner, and

with contemptuous usage and insulting language, &c., to the damage of the plaintiff in $5,000.

There were two counts in the petition, in substance the same, being but one cause of action. The answer was a general denial of the allegations in the petition. There was a trial by jury, resulting in a verdict and judgment for plaintiff for $800, and a motion for new trial having been overruled, defendant brings the cause here by appeal. The testimony tended to show that the plaintiff had shipped a car load of stock from Knob Noster to St. Louis over defendant's railroad, and had received from defendant a "stock pass" from said city of St. Louis back to Knob Noster; that the plaintiff, while said pass was in force and in his possession, entered a passenger car in what was known as the Washington accommodation train, in charge of conductor Eveland, with intent to go to Eureka, an intermediate station between St. Louis and Knob Noster stations; that, after the said train was under way, the said conductor proceeded to collect passes or fare of the passengers, and, when he came to where plaintiff was sitting, plaintiff offered said "stock pass" which said conductor declined to honor, and stated to the plaintiff that he could not honor the same under his orders, and that plaintiff must pay the usual fare to Eureka, which plaintiff refused to do; that the said conductor then stated to plaintiff that he could not carry him unless he paid his said fare, and that he must leave the car if he did not so pay; that plaintiff refused to pay said fare so demanded, and said conductor stopped said train, and plaintiff got off at Taylorwick station, distant about one mile from the St. Louis stock yards. There was no force employed in expelling the plaintiff from the car. The hour the plaintiff got off of said train was between five and six o'clock in the evening. There was a depot for passengers at Taylorwick station. Plaintiff walked back to the stock yards, where he remained till the following day, when he went west on defendant's train, having purchased a ticket for that purpose.

The testimony tended further to show that the weather was cold, with snow on the ground, and that plaintiff, in order to get suitable lodgment for the night, walked back to the stock yards, a distance of from one to three miles; that he was put off the train about dark, was known as a stock dealer, had about $400 on his person, and was made sick by becoming overheated, was feeble and unable to do much for two or three months; that the expulsion of plaintiff from defendant's car was without force, and that the conductor acted under the belief that he was not authorized to receive the pass.

The court gave eight instructions on plaintiff's motion over defendant's objection, the first and second of which are to the effect that, although the jury might believe that the conductor ejected Graham under an honest misunderstanding of an order issued by defendant, yet, if they believe that the plaintiff, being engaged in shipping stock over defendant's road, had received a stock pass from defendant entitling him to ride on the road from St. Louis to Knob Noster, without payment of fare, and that he presented said pass to the conductor in charge of the train which he refused to receive, and then ejected plaintiff, they would find for plaintiff. In the third instruction they were told that it was not necessary that physical force should have been used on the occasion, but that if the pass was in full force, and the conductor refused to honor it, stopped the train and ordered plaintiff to leave the car, and that he left in obedience to the command, that in law it constituted an ejection, and that, under the pass entitling plaintiff to be carried from St. Louis to Knob Noster, defendant was bound to carry plaintiff from St. Louis to any other point between St. Louis and Knob Noster, and that it was no excuse for his expulsion, that he only intended to ride on that train to Eureka, if he was actually on his return trip to Knob Noster.

1. RAILROADS: passenger, right of: "stock pass."

2. ——: ——: ——:

We cannot perceive the force of any objection to the

above declarations, and the counsel for defendants rely
3. ———: ———: chiefly for reversal on the action of the court
damages, compen-
satory and exem- in giving, as it is-claimed, instructions four
plary.
and seven, the last mentioned of which is to the effect
that, if the offense complained of was willfully committed,
then the jury had the right to give damages " as a punish-
ment to the defendent for the purpose of making an
example and as a warning to others," in addition to com-
pensatory damages for the injury.   In cases of this kind,
when there is no evidence tending to show willfulness or
other circumstances of aggravation, the damages should
only be compensatory, but when the act is aggravated, and
there has been oppression, fraud, malice or willfulness,
evincing an intent to injure, damages may be allowed not
only to compensate the sufferer, but punish the offender.
*Franz v. Hilterbrand*, 45 Mo. 121.   And corporations, like
individuals, are liable to exemplary damages when the
facts of the case will warrant the jury in finding them.
*Malecek v. Tower Grove R. R. Co.*, 57 Mo. 17.   In point of
fact, however, no such declaration as is complained of by
defendant, was given.   Upon a careful examination of the
record, it appears that instruction seven, on the subject of
punitive damages, was refused, and is therefore, not before
us.   The only instruction given on the part of plaintiff
in reference to damages, is as follows: the jury are in-
structed that, if they find for plaintiff, in assessing his dam-
ages, they may take into consideration all the circumstances
attending the expulsion of plaintiff from the car of de-
fendant.   It is also insisted by counsel that the court erred
in giving instruction No. 4, to the effect that the ejection
of plaintiff by the conductor, on his refusal to pay fare
after the rejection of the stock pass, constituted in defend-
ant gross negligence, and for which it is liable, although
they might believe that the conductor acted from an hon-
est misunderstanding of an order from his superior.   The
record before us shows that this instruction was not given,
and hence it is unnecessary to examine the question in-

volved in it.    It is also urged that the court erred in refusing instructions 6, 7, 8 and 9, asked for by defendant, the 9th of which is as follows:    9th.    The court instructs the jury that the pass read in evidence was a contract to carry the plaintiff from St. Louis, Mo., to Knob Noster, Mo., and that, if they believe from the evidence that the plaintiff when he got on the cars intended to go only to Eureka on that train, and not to Knob Noster, as his said pass read, and so informed the conductor, and claimed the right to be carried free from St. Louis to Eureka, (an entirely different place from that named in the said pass,) on said pass, then, that was an abandonment by the plaintiff himself of the original contract, and, at the same time, an attempt on his part to make an entirely new and different contract, under and by virtue of the said identical pass or original contract, which he had no right in law to do, and that the said conductor had right, and it was his duty to refuse to enter into such new contract, and to require the plaintiff to pay the usual fare from St. Louis to Eureka, to which place the plaintiff had said he was going, and upon his refusal to do so, it was both the right and the duty of the said conductor to put plaintiff off the cars, and the jury must find for the defendant.    If plaintiff had a right to ride under his pass in defendant's car from St. Louis to Knob Noster, he had the right to stop at any intermediate point, and as the evidence showed that Eureka was such a point, and that plaintiff was actually on his return trip to Knob Noster, the instruction was properly refused.

We cannot see any well grounded complaint against the action of the court in refusing instructions Nos. 6, 7 4. INSTRUCTIONS. and 8, as the following were given, viz:

2.    The court instructs the jury that this is an action by the plaintiff for a breach of contract by defendant to transport and carry plaintiff as a passenger from St. Louis to Knob Noster, and if they find the issue for the plaintiff, then the plaintiff can only recover whatever damages he

Graham v. Pacific Railroad Company.

may show he has actually sustained, and which he could not have averted by reasonable exertion, care and prudence on his part, unless plaintiff was ejected in a wanton, rude or aggravated manner, indicating oppression, malice or desire of revenge.

3.   Although they may believe, from the evidence, that defendant was guilty of a breach of contract in ejecting plaintiff from its car, yet, if they further believe, that the conductor in putting him off was acting in obedience to the orders of his superior officers, or what he honestly believed such orders to be, and so believing, refused to carry plaintiff any further, and caused him to leave the cars at a depot or usual stopping place, or near any dwelling house, or at any other suitable stopping place, and that the conductor, in so doing, did not act in a rude, wanton or aggravated manner, indicating oppression, malice or a desire to injure, the plaintiff cannot recover punitive or vindictive damages, and cannot recover any damages beyond a compensation for the money actually expended by him during his detention, and the subsequent passage home, and for the reasonable value of his time necessarily lost in consequence of said ejection, and other expenses necessarily incurred.

4.   Unless the jury are satisfied from the evidence that plaintiff, soon after his ejection, was taken and affected with a bad cold and ill-health, and that such cold and ill-health was the immediate cause or result of his ejection, and not produced by any subsequent and unnecessary act of plaintiff, they will disregard and not take into consideration any expenses for medicine or loss of time which plaintiff may have incurred, if any, on account of the same, nor will they assess any damages on account of such cold or ill-health.

5.   The pass, read in evidence, only entitled plaintiff to ride on defendant's cars when returning from St. Louis to Knob Noster,      *      *      and, if plaintiff was not at the time of his ejection so returning, and was not on his

way back, and the conductor ejected him solely on that account, then they should find for the defendant.

These instructions fully embrace all that is contained in Nos. 6, 7 and 8, the refusal of which is urged as error. They place the question of damages before the jury in the most favorable light for the defendant. The verdict of the jury was for $800, and it is insisted that the judgment should be reversed, because it is claimed the damages are excessive.

It was held by this court in the case of *Kennedy v. North Mo. R. R. Co.*, 36 Mo. 351, "that before we are at 5. DAMAGES: when not so excessive as to authorize reversal. liberty to interfere with a verdict, it must appear at first blush that the damages are flagrantly excessive, or that the jury acted from partiality, prejudice or passion. When there is any evidence to support the verdict, it will not be disturbed, but the court will interfere when there is no evidence, or when the court gives an instruction not authorized by the evidence." In the case before us, plaintiff's right to recover damages was clearly established, and it does not appear to us that they are so flagrantly excessive, or that the sum assessed is so disproportioned to the injury as to bear marks of passion, prejudice or corruption, on the part of the jury, and, because we cannot say this, the judgment cannot be disturbed on the ground of excessive damages. It may also be observed in this connection that the evidence shows that Tallmage, the superintendent, who issued the order to the conductor, and under which he acted in ejecting plaintiff, stated in a letter written to plaintiff the day after his expulsion, "that the orders issued were to honor all such passes during the number of days specified in them." This order was not produced on the trial, and the conductor testified that it was to the effect "that on and after the 10th of January, 1872, stock passes are given to persons to go with their stock and take care of it, and are not good on passenger trains." If the orders were such as Tallmage in his letter stated them to be, then the act of the conductor in expell-

ing the plaintiff on the 12th of January, from the car was willful and malicious, that is, the wrongful act was done intentionally and knowingly, for the pass of plaintiff on its face showed it to be good till the 19th of January, and had seven days to run when he was ejected. It was also in evidence that the order was produced on a former trial of the cause, and a witness, who kept the minutes of the evidence on that trial, testified that the words "such passes were not good on passenger trains," were not contained in the order. These matters were in evidence, and were before the jury for their consideration, and if they reached the conclusion, as they might have done, that the act of the conductor in the expulsion of plaintiff was wanton and willful, they would have been justified in giving exemplary damages as it appeared from the evidence that defendant still retained him in their employ in the same capacity after they had knowledge of his act. *Perkins v. M. K. & T. R. R.,* 55 Mo. 201.

Since the rendition of the judgment, and since the appeal from it to this court, plaintiff has died, and the cause has been revived in the name of his executrix, Lucinda Graham, who has been substituted as party plaintiff. Judgment affirmed, in which the other judges concur.

AFFIRMED.