L. G. CROSS, Respondent, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 5, 1894.

1. **Railroads:** PASSENGERS ON FREIGHT TRAINS. A railway company may by its published rules require a passenger to obtain a ticket as a condition to his being entitled to ride on one of its freight trains; but, in order to have the right to enforce this rule, the company must afford the passenger reasonable facilities for the purchase of such ticket, and must for that purpose keep its ticket office at a station open for a reasonable time before the departure of the train therefrom.

2. ———: ———: SUFFICIENCY OF EVIDENCE. The evidence in this cause is considered, and is *held* (Rombauer, P. J., *dissenting*) to warrant a finding that the railway company had failed to comply with its obligation in this respect.

3. ———: WHAT CONSTITUTES A PASSENGER: LAW AND FACT. One who enters a railway train with the honest purpose of securing the right to ride thereon is a passenger as a matter of law.

4. **Instructions:** INSUFFICIENCY OF EVIDENCE. An instruction, which is not warranted by the evidence, is erroneous.

5. **Ejectment of Passenger from Railway Train:** INSTRUCTION AS TO MEASURE OF DAMAGES. In arriving at the damages sustained by a passenger through his being wrongfully ejected from a railway train, the jury may take into consideration the condition of the weather, the place and manner of the ejectment, and any sickness and suffering on his part which was caused thereby: and an instruction to that effect is in proper form.

*Appeal from the Howell Circuit Court.*—HON. W. N. EVANS, Judge.

REVERSED AND REMANDED.

*Wallace Pratt* and *Olden & Orr* for appellant.

(1) A railroad company has a right to make rules designating what freight trains running on its line shall carry passengers, and that persons intending to take passage on such freight trains must first procure tickets before entering the freight trains which are allowed by the rules of the company to carry passengers. 2 Wood's Railway Law, sec. 351; 2 Beach on Law of Railways 861; *Jones v. Railroad,* 17 Mo. App. 158; *Eaton v. Railroad,* 57 N. Y. 382; *Railroad v. Flagg,* 43 Ill. 364; *Railroad v. Bartram,* 11 Ohio St. 457; *Law v. Railroad,* 32 Iowa, 534; *Railroad v. Vandyne,* 57 Ind. 576; *Reese v. Railroad,* 131 Pa. St. 422; 2. Rorer on Railroads, p. 985; Thompson on Carriers of Passengers, 138; *Railroad v. Rose,* 11 Neb. 177. And posting such rule conspicuously in passenger· stations and caboose

cars is sufficient notice to the public to justify the company in ejecting a passenger who is without a ticket, from a freight train that has commenced its journey, even though such passenger has no actual notice of the rule, and offers to pay his fare. *Railroad v. Rose*, 11 Neb. 177; *Jones v. Railroad*, 17 Mo. App. 158; *Railroad v. Bartram*, 11 Ohio St. 457; 2 Wood's Railway Law, sec. 351; 2 Beach on Law of Railways, sec. 861; *Law v. Railroad*, 32 Iowa, 534; Wheeler's Modern Law of Carriers, 177. (2) Instruction number 3, given on the part of plaintiff, is erroneous, because it submitted to the jury the legal proposition as to whether plaintiff boarded defendant's train as a passenger; and it is also erroneous in that it submitted to the jury the question as to whether plaintiff was put off at a usual stopping place, or near a dwelling house. Thompson on Charging the Jury, sec. 1; *Albert v. Bessel*, 88 Mo. 150; *Marshal v. Shricker*, 63 Mo. 308; *Kenidy v. Railroad*, 79 Mo. 207. (3) Instruction number 4, given on the part of plaintiff, furnishes no guide to the jury as to the correct measure of damages. *Logan v. Railroad*, 77 Mo. 669; *Fink v. Railroad*, 4 Lansing, 147; Thompson on Charging the Jury, sec. 22; *Hawes v. Stock Yard Co.*, 103 Mo. 60.

*A. H. Livingston* and *Chaney, Green & Gardner* for respondent.

BIGGS, J.—On the sixteenth day of April, 1891, the plaintiff was ejected from one of the defendant's local freight trains. He has brought this action for damages on account of it.

The substance of the charge in the petition is, that the defendant was in the habit of carrying passengers on its local freight trains; that, on the day mentioned, the plaintiff went to the defendant's depot at the station at Norwood on the defendant's line of road to

purchase a ticket, and to take passage on one of the defendant's local freight trains to Mansfield, another station on the defendant's road, but that the ticket office was closed and the defendant's ticket agent absent, and that for this reason he could not obtain a ticket; that he, nevertheless, got on the train without a ticket, and, after being carried a distance of about one mile from the station, he was expelled from the caboose, and that, before being expelled, he offered to pay to the conductor his fare to Mansfield. It is then averred that the place where the plaintiff was put off was not at a station nor near a dwelling house; that the plaintiff was in feeble health; that he was compelled to walk back to Norwood through a severe rain storm, which was raging at the time; and that by reason of the exposure he contracted severe sickness, and that he remained sick for several weeks thereafter.

The defendant admitted in its answer that the plaintiff got on the local freight train at Norwood, and that he was ejected therefrom. But as a defense to the action it was averred that, under a rule of the company then posted in the depot at Norwood and also in the "caboose car" of the train, all persons were forbidden to take passage on local freight trains without having first procured tickets; that the plaintiff, after having been notified of this rule, refused to buy a ticket, and that shortly after leaving the station at Norwood the plaintiff was put off the train by the conductor for the reason that he had no ticket, and that in ejecting him no more force was used than was necessary for that purpose. All other allegations in the petition were denied.

The case was submitted to a jury, and a verdict in favor of the plaintiff for $623 was the result. Judgment was entered for the amount, and the defendant,

after moving unsuccessfully for a new trial, has brought the case here for review.

It is insisted by the defendant that under the law and the evidence the plaintiff is not entitled to recover.

It is admitted that the defendant carried passengers on its local freight trains, and that "caboose cars" were attached to such trains for the use of passengers. It is also uncontroverted that the published rules and regulations of the company required persons, who intended to take passage on such trains to procure tickets. Under the evidence, knowledge of the existence of this rule must be imputed to the plaintiff. That the plaintiff was ejected from the car for the reason that he did not have a ticket, and that he offered to pay his fare before he was put off, are also undisputed facts.

Counsel for the defendant argue that under the foregoing facts there could be no liability, for the reason that the plaintiff by entering the car without a ticket became a trespasser, and the fact, if it was a fact, that he was prevented from buying a ticket on account of the alleged absence of the ticket agent, did not change his *status*—that is, make him a passenger on the defendant's train. The reason assigned is, that under the rules of the company, the plaintiff could only become a passenger on a freight train by first procuring a ticket which would authorize him to travel thereon, and that, if the defendant failed to afford to the plaintiff reasonable facilities for purchasing a ticket, this wrong did not justify the plaintiff in the commission of another, and that under the circumstances the plaintiff could only wait for another train and sue the company for damages for the delay.

It is settled by many decisions, in fact we have found none to the contrary, that a railroad company

may confine the transportation of passengers to its passenger trains, and its freight trains may be used exclusively for the hauling of freight; or it may, by published rules, provide that passengers may be carried on its freight trains under reasonable conditions and restrictions. *Jones v. Railroad*, 17 Mo. App. 158; *St. Louis Railroad Co. v. Myrtle*, 51 Ind. 566; *Dunn v. Railroad*, 58 Me. 187; *Illinois Railroad v. Nelson*, 59 Ill. 110; *Evans v. Railroad*, 56 Ala. 246; *Chicago, etc., Railroad Co. v. Parks*, 18 Ill. 460; *Chicago, etc., Railroad v. Flagg*, 43 Ill. 364; *B. & M. R. R. Co. v. Rose*, 11 Neb. 177; *Hobbs v. Railroad*, 49 Ark. 357; *Law v. Railroad*, 32 Iowa, 534. These authorities hold that a rule requiring persons to procure tickets before attempting to ride on a freight train is a reasonable regulation, but that it carries with it the duty on the part of the company to furnish reasonable facilities for the purchase of tickets. The concensus of opinion on the subject is stated by the supreme court of Illinois in the case of *Railroad v. Flagg, supra*. The facts in that case were quite similar to the facts here. There, Flagg, without first having procured a ticket, entered the caboose of a freight train which was advertised to carry passengers. He was prevented from buying a ticket, because the ticket office was closed. He was expelled from the car after having offered to pay his fare to the conductor. The court held substantially that, when the company required tickets to be purchased, it became its duty to furnish facilities for that purpose by keeping open its ticket office a reasonable time in advance of the time fixed by the time table for the departure of trains, and that, the company having failed in the particular instance to do so, the plaintiff had the right to enter the caboose and to be carried to the place of destination by the payment of the regular fare to the conductor.

The law is thus stated by Rorer in his work on railroads (vol. 2, p. 985, section 18): "The law does not compel railroad corporations to carry passengers upon their freight trains, nor freight in their passenger coaches; it only requires them to carry both, but leaves it to such corporations to regulate the manner in which the same shall reasonably be done. It being a matter of choice with them whether, and upon what terms, they will carry passengers upon trains for freight, the right therefore devolves on themselves to fix the same, and it is held that it is not an unreasonable regulation that they shall only be carried on freight trains by procuring tickets before entering thereon. * * * The company may make and enforce rules against carrying passengers upon freight trains, but if they hold themselves out to the public to carry passengers on such trains, then they are bound to carry accordingly to the extent, and in the manner, in which they thus profess to the public an intent to carry, and must afford a reasonable opportunity to obtain tickets as in other cases, or else may not discriminate as for want of tickets."

The above quotations show that the defendant's position is an untenable one. We have found no authority which supports it, nor can we conceive how there could be such, for a regulation requiring tickets to be purchased, and which is unaccompanied by the duty to afford reasonable facilities to make such purchase, would be clearly unreasonable and nonenforceable.

The case of *Jones v. Railroad, supra,* is no authority for the defendant. There, Jones, with knowledge of the rules of the company, which prohibited passengers from riding on freight trains without tickets, boarded a freight train at a way station where the company had no depot and where tickets were not sold. The distinction between that case and this is obvious.

Neither does the decision of the supreme court in the case of *Lillis v. Railroad*, 64 Mo. 464, in any way support the defendant's contention. There, the plaintiff entered a passenger car for the purpose of testing the validity of a limited ticket which had expired by limitation, *not to acquire a right* to ride on the train, but to compel the conductor to pass him on a void ticket or to make a case of damages. As the supreme court held the ticket to be void, it necessarily followed that the plaintiff was a trespasser and not a passenger.

The only remaining question under this assignment is whether there was evidence tending to prove that the plaintiff made reasonable and proper efforts to obtain a ticket, and whether he was prevented from doing so by the absence of the defendant's agent from the ticket office.

On this point, the plaintiff testified substantially that he went to the depot just after the arrival of the train for the purpose of buying a ticket from Norwood to Mansfield; that, at the time, the train was standing on the track near the depot; that a boy who was sweeping out the office told him that, as it was raining and there was no one around the depot, the agent had gone to his home; that he (plaintiff) remained about the depot for ten or fifteen minutes, and that he inquired of the boy whether the agent had returned, and was told by the boy that he had not; that afterwards he made the same inquiry with a like result, and that, as it then began to rain and he was not feeling well, he went into the caboose and lay down, and that he might have fallen asleep. The evidence was that the train remained at the station about thirty minutes. On the other side, the agent testified that he was not in the ticket office all the time the train was at the station, but that he was about the depot all the time. He says that he did not see the plaintiff until after he had been

ejected from the train. He also testified that the boy had authority to sell tickets. There was also evidence to the effect that a brakeman went into the caboose before the train started, and notified the passengers of their duty to get tickets. Whether the plaintiff heard this or not does not clearly appear. There was some evidence that he was asleep.

It is very clear that the case was one for the jury, unless it was the duty of the plaintiff, under the circumstances, to ask the boy for a ticket. The testimony of the boy was not taken. There was no evidence of his age. He is described in the record as an office boy, and, when the plaintiff saw him, he was sweeping out the office or looking for a paper. There was no evidence that the plaintiff knew him, or that he had reason to believe that he had authority to sell tickets or to act for the company in the absence of the agent. If he was a mere office boy, we take it that it would be quite unusual for him to have free access to the ticket case. Therefore, under this record, we are not prepared to say that the plaintiff did not make the requisite effort to procure a ticket. We will, therefore, overrule this assignment.

The court, at the instance of the plaintiff, instructed the jury as follows:

"The court instructs the jury that, while the defendant may have the right to provide by rule that persons shall not be carried on their freight trains, yet it is also the duty of the defendant to have and afford sufficient facilities for the purchase of tickets, and that, if they believe from the evidence that plaintiff applied at defendant's office at Norwood to purchase a ticket shortly before he boarded such train, and defendant's ticket agent was absent, then defendant's conductor had no right to expel plaintiff from such train, provided plaintiff offered to pay his fare in money."

Cross v. The K. C., Ft. S. & M. R'y Co.

"The court instructs the jury that, if they believe from the evidence that the plaintiff got on the defendant's local freight train at Norwood for the purpose of being carried to some other point, and that, before he boarded such train, he went to defendant's ticket office to purchase a ticket, and that defendant's agent was absent, and, when asked for his fare ticket by the conductor of such train, plaintiff offered to pay such conductor the fare in money for such intended trip, then he had a right to be carried on such train; and that, if you believe from the evidence that the conductor put him off such train, that the defendant is liable, and you should find for the plaintiff in such sum as he may have sustained by being so ejected therefrom."

The second instruction given by the court for the defendant is as follows:

"The court instructs the jury that the law does not require the ticket agent to remain at his place to sell tickets at all times, but only a reasonable time before the departure of trains, that persons desiring to procure tickets may have time to do so."

It is claimed that the instructions are inconsistent in that the jury were told in plaintiff's instructions that, if he applied for a ticket *shortly* before he boarded the train and that the ticket agent was then absent, then his expulsion was unauthorized; whereas the jury were told by the defendant's instruction that the law only required the ticket agent to be at his office a *reasonable time* before the departure of trains. The plaintiff's instructions are subject to criticism, but as his evidence tended to prove that he applied for a ticket not exceeding ten minutes before the train left the station, and that the agent was then absent, we cannot see how the defendant was prejudiced; for under this evidence—which was not positively contradicted—the jury was warranted, under the defendant's instruction, in finding

that the ticket agent had been remiss in the discharge of his duties.

Complaint is also made of the plaintiff's third instruction which reads:

"The court instructs the jury that, if they believe from the evidence that plaintiff boarded defendant's freight train at Norwood as a passenger for the purpose of being carried to some other point on defendant's road, and that he offered to pay the conductor of such train the usual fare for such trip or passage, and that the conductor ejected and put plaintiff off of such train at a point away from the usual stopping place, and not near any dwelling house, then they will find the issues for the plaintiff."

It is insisted that this instruction submitted to the jury a question of law by requiring them to find whether or not the plaintiff was a passenger on the train. The question is a mixed one of law and fact. If the facts are conceded or undisputed, it is one of law for the court; otherwise, it is a question for the jury under proper instructions. There is not a particle of evidence tending to prove that the plaintiff did not get upon the train with the honest purpose of securing the *right* to ride thereon. This constituted him a passenger in the eye of the law. The defendant, however, could legally terminate this right of passage, provided the plaintiff failed to make proper and reasonable efforts to buy a ticket, or if he had refused to pay his fare. Hence the court would have been justified in instructing peremptorily that the plaintiff was a passenger.

Objection is also made to the instruction, because it required the jury to find for the defendant if the plaintiff was not ejected at a usual stopping place or near a dwelling house. It is insisted that our statute on that subject has no application. The section (Revised Statutes, 1889, section 2581) reads: "If any

passenger shall refuse to pay his fare, or shall behave in an offensive manner, or be guilty of repeated violations of the rules of the company, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage out of the cars, using no unnecessary force, at any usual stopping place or near any dwelling house, as the conductors shall elect, on stopping the train." Whether this section of the statute is applicable to the facts in the present case, we need not decide. Under any view the latter portion of the instruction was erroneous. The plaintiff was not put off at a station, but he was put off *near a dwelling house*. There was no substantial controversy in the evidence on this point. The plaintiff only testified that he did not see the house; therefore the instruction ought to have been refused on the ground, if for no other, that there was no substantial evidence to authorize it. This error in the instruction was prejudicial, for under it the jurors might very well have returned the verdict which they did, although they may have believed that the plaintiff did not exercise reasonable diligence to procure a ticket. It is only when it is manifest that the same result must ensue upon a correction of the error, that an appellate court will not reverse a judgment for error in the instructions. *Noble v. Blount*, 77 Mo. 235; *Goodwin v. Railroad*, 53 Mo. App. 9. In the case at bar there was a very sharp and decided conflict in the evidence on the only material issue.

The plaintiff's instruction as to the measure of damages is as follows:

"That, if they find for the plaintiff, they will assess his damages at such a sum as they may believe from the evidence he has sustained, not to exceed $5000, and that in arriving at the amount of damages plaintiff has sustained, if any, they should take into considera-

tion the place he was put off of the train, the condition of the weather, the manner in which he was ejected and his sickness and suffering, if any, that was caused by being so ejected.''

There was evidence to authorize the instruction, and it is sufficient under the decisions of the supreme court in the cases of *Graham v. Railroad*, 66 Mo. 541; *Waldhier v. Railroad*, 87 Mo. 37; *Hawes' v. Kansas City Stock Yards Co.*, 103 Mo. 60.

For error pointed out in the instructions, the judgment will be reversed and the cause remanded.   Judge Bond concurs.   Judge Rombauer concurs in the result, and in the treatment of the various points in the opinion with the exceptions of those discussed in his separate opinion.

### SEPARATE OPINION.

ROMBAUER, P. J.—I concur in the result, and in the greater part of the reasoning of the foregoing opinion.   I can not, however, concur in so much thereof as holds that the plaintiff by his evidence did show a *prima facie* case of recovery.   His own evidence discloses the fact that he entered the caboose ten minutes and more before the train departed from the station, and that he never, either before or after that time, applied for the purchase of a ticket at defendant's office.   His own evidence furthermore discloses the fact that the defendant's office was not closed at any time after he arrived at the station and until the train departed. The defendant's uncontroverted evidence shows not only that it had an agent to sell tickets in its office during the time when the defendant called at the office, but also that the defendant gave reasonable notice in the caboose that it was the duty of the passengers to obtain tickets if they intended to travel on that train.

Now, while I concede the rule to be as stated in *Chicago, etc., Railroad Co. v. Flagg,* 43 Ill. 364, that it is the duty of the carrier who seeks to enforce a rule, that passengers must buy tickets before they enter the train, to furnish reasonable facilities to the passengers to purchase such tickets, I see no evidence in the record that the rule was violated in this instance by the carrier. There is no evidence that the plaintiff could not have obtained a ticket, had he applied for it at any time. Whatever evidence there is in the record on that subject is directly to the contrary. The rule requires the carrier to keep *an agent* for the sale of tickets in its office for a reasonable time before the departure of a train; but there is neither rule nor reason in requiring the railroad company to keep *its regular station agent* there for that purpose.

It is an elementary rule of evidence governing the burden of proof that, where the plaintiff grounds his right of recovery upon a negative averment, it is for him to prove the negative, and not for the defendant to prove the affirmative. 1 Greenleaf on Evidence, section 78. It was for the plaintiff in this case to show that he had no reasonable facilities for purchasing a ticket; and I fail to see how he has acquitted himself of that burden without showing either that he applied for a ticket; or that his application for a ticket would have been unavailing, if made.

For the same reason I must hold that there was no evidence on which the two first instructions for plaintiff could have been based.