ROWE v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. April 18, 1902.)

1. STREET RAILROADS—ASSAULT BY EMPLOYE—COMPANY'S LIABILITY—PUNITIVE DAMAGES.

In an action against a street railroad company by a passenger to recover for an assault by one of its employés, it did not appear that defendant had employed an improper servant, or ever authorized him directly or indirectly to assault plaintiff, or participated in the act, or ratified or approved it. *Held*, that it was error to allow the jury to award punitive damages, and that it required a reversal of the judgment, where the award much exceeded the actual damages incurred.

2. SAME—RULES AS TO EMPLOYES—EVIDENCE.

On the trial of an action by an employé of a street railroad for an assault by an inspector in compelling him to leave the front seat of a car on which he was riding when off duty clad in his uniform, the court refused to hold the trial to permit defendant to send for its book of rules, and thereupon plaintiff's counsel stated that he was ready to consent that the rules "forbade motormen or conductors in uniform from riding on the front seats of these open cars to the exclusion of passengers." Defendant's counsel, though objecting that it was incorrectly stated, finally said he would accept the offer, so that he might comment on the rule. *Held* sufficient to establish the existence of the rule in the terms stated.

3. SAME—REASONABLENESS.

A rule of a street railroad company that no employé when off duty in uniform shall sit on the front seat of an open car in operation is reasonable, even when applied to an employé paying fare as a passenger, as promoting the safety of passengers by preventing the motorman's attention from being diverted from his work by the opportunity for conversation which might otherwise be occasioned.

Appeal from trial term, Kings county.

Action by George L. Rowe against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

I. R. Oeland, for appellant.
Elmer S. White, for respondent.

JENKS, J. The plaintiff complained of an assault, of a false imprisonment, and of a malicious prosecution. The learned trial court dismissed the last two causes named, but submitted that for assault to the jury, which found a verdict for $1,000 for the plaintiff. The version of the plaintiff, who, at the time, was an employé of the defendant, and was clad in its uniform, which he owned, is that while off duty he boarded an open car of the defendant, seated

himself on the front seat, and paid his fare; and that upon his refusal to leave the front seat and take a place in some other part of the car he was assaulted by an inspector of the defendant. I think that the judgment must be reversed for two capital errors.

First. The learned court instructed the jury, under exception, that it might award punitive damages. The phrases "punitive damages," "exemplary damages," "smart money," define themselves. I fail to see any principle of law or of reason which would justify an award of damages in this case to punish the defendant, or to make an example of it, or to make it smart. I find no evidence in the record that proved or tended to prove that the defendant either wittingly or negligently had engaged or had retained an improper servant, or that it had ever authorized him by special command or by general warrant to assault the plaintiff, or that it had in any way participated in the act, or had ratified or had approved it. I think that the charge was erroneous, and requires a reversal of the judgment, particularly in view of the fact that the damages inflicted upon the plaintiff's person and property were but trifling, and were incidental to a mere scuffle or bout at fisticuffs, in which he appears to have retaliated. Fisher v. Railway Co., 34 Hun, 433; Muckle v. Railway Co., 79 Hun, 32, 29 N. Y. Supp. 732; Cleghorn v. Railroad Co., 56 N. Y. 44, 47, 15 Am. Rep. 375; Murphy v. Railroad Co., 48 N. Y. Super. Ct. 96; Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97; Sedg. Dam. § 380.

Second. The learned trial court held that no rule or regulation was in evidence. But I think there was testimony in the case which would have warranted the jury in determining that there were rules or regulations applicable to the plaintiff, maugre the fact that the written rule itself was not formally read in. Thus I find that the plaintiff at one place testified that there was a rule that if "you [evidently referring to one of his status] paid your fare, you could ride any part of the car." The court asked of him: "Q. You were not allowed to ride in that seat, is that it? Did you say that you were not allowed to ride in that seat if you had your uniform on? A. No, sir." By the Court: "I knew what the rules of the road were,—that a man in uniform was not permitted to ride in that place." Upon the refusal of the court to halt the trial in order to permit the defendant to send for its book of rules, the counsel for the plaintiff stated that he was ready to consent that the rules "forbade motormen or conductors in uniform from riding on the front seats of these open cars to the exclusion of passengers." The counsel for the defendant first accepted the rule, though he said that it was not correctly stated, so far as it contained a limitation to the exclusion of passengers, then rejected it, and finally, after colloquy and discussion, said that he would accept the offer, so that he might comment upon the rule. I think that this offer and acceptance were sufficient to establish the existence of a rule in the terms stated. Greenl. Ev. §§ 186, 205; Whart. Ev. §§ 1075, 1184, 1186. Assuming, then, that there was evidence that there was a rule that a man in uniform was not permitted to ride in that place, although the present discussion may prove to be vain, so far as the new trial

is concerned, for the reason that I assume that the written rule, when read in evidence, may vary from any rule stated on this trial, yet it may be pertinent to say, in view of the new trial, that we do not agree with the learned trial justice in his doubt that the defendant "had any right to make a rule that if a man is off duty and is riding as a common citizen and wearing his own clothes (i. e., a uniform of the defendant, but bought by the plaintiff), he may not ride on the front seat," and in his holding, further on, that, as matter of law, "if such a man paid his fare he had a right to ride there despite any rules," or that, "even though the rule was as stated by the counsel for the defendant on his opening, it gave to them no right to insist upon it if the man paid his fare," or similar holdings as to the validity of such a rule. It is the right and the duty of the defendant to make rules and regulations for both the public convenience and the public safety (Avery v. Railroad Co., 121 N. Y. 31, 24 N. E. 20), and the reasonableness of a regulation is a question of law. Hibbard v. Railroad Co., 15 N. Y. 455, citing 8 Coke, 126b; Vedder v. Fellows, 20 N. Y. 126; Muckle v. Railway Co., supra; Avery v. Railroad Co., supra. We are of opinion that a rule of the defendant that no man in its uniform could sit upon the front seat of one of its open cars while such car is in operation can be sustained as reasonable. We think that it promotes the safety of passengers. The car is operated by a motorman who alone applies and withholds the power, and who alone controls the brake and other checks. He stands at the front of the car. Immediately behind him is the front seat. There is no structure between him and that seat. It needs no detail of his duties to show that ordinary care and prudence on his part may require his constant and uninterrupted attention to prevent collisions or other accidents which may be fraught with danger to the passengers. Anything which diverts his attention from his work may entail accident. Conversation between the passengers and the motorman would tend to divert his attention and to impair his vigilance. The defendant had a right to assume that acquaintanceship between passenger and motorman might provoke conversation between them. It had the right to assume that an employment common between the passenger and the motorman might have made acquaintanceship between them, or might be a passport to acquaintance. If the passenger and the motorman were both clad in the uniform of the defendant, it had the right to assume that they were both in its employ. Therefore, when it enacted a regulation that no person in its uniform should occupy a seat which afforded every opportunity to conversation with the motorman, it adopted a regulation which tended to prevent conversation with the motorman, and thus to remove a cause which might divert his attention from his duties. The rule worked, then, for the protection of the passengers, and is entirely reasonable. Payment by the employé of the fare did not affect the reason of the rule, even though such payment might make him a passenger, in contradistinction to an employé who rode free. He was still an employé of the defendant, subject to the presumption that he either knew his fellow employé, or that common employment

might beget acquaintance. The fact that the defendant might· have secured the attention of the motorman by a rule that he should not speak to any passenger does not affect the reasonableness of the rule in question. If there were no reason apparent for the rule except that the front seat was a coveted place, which should be reserved for passengers who paid, to the exclusion of employés who rode free, then I would admit the force of the contention of the learned counsel for the respondent that the employé for the nonce became a passenger when he paid his fare, and that he might well have refused to take himself into the middle of the car upon the demand of the inspector. It is argued that the reason of the rule is not to be found in the safety of the carriage, because the rule does not prohibit occupancy of the rear seat. But there is a manifest difference between the duties of a conductor and a motorman, for the latter is required to exert a vigilance which, if relaxed for an instant, even to the turning of his head, may bring danger or death, while the momentary inattention of the former is not fraught with any similar degree of peril to the passengers. I fail to see that such a regulation is attended with any unnecessary inconvenience to an employé who chooses to become a passenger to the extent of payment of fare. It is not contended that he is shut out from the car of the common carrier, or that he cannot occupy a seat in the place where the main body of the passengers must necessarily be seated. In Peck v. Railroad Co., 70 N. Y. 587, the court sustained a regulation which set apart a car in the first instance for women traveling alone, or with male relatives, or with friends, on the ground that it tended to their comfort and security, and to the preservation of good order. A fortiori, a regulation which tended to secure the safety of passengers from accident and perhaps fatalities would seem to be within the reasonable powers of this defendant corporation. In the last case cited, the court also held that if the defendant had a right to make the regulation it had a right to enforce it, even to the extent of removal of him who violated it. See, too, Railroad Co. v. Flagg, 43 Ill. 364, 92 Am. Dec. 133.

The judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event. All concur.